[Cite as *Olmsted Falls Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision,* 122 Ohio St.3d 134, 2009-Ohio-2461.]

OLMSTED FALLS BOARD OF EDUCATION, APPELLEE, *v.* CUYAHOGA
COUNTY BOARD OF REVISION ET AL., APPELLEES;
M & B OLMSTED, L.L.C., APPELLANT.
[Cite as *Olmsted Falls Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision,*
122 Ohio St.3d 134, 2009-Ohio-2461.]

*Taxation — Real property valuation — Board of Tax Appeals' valuation of property based on appraisal evidence was reasonable and lawful — Estoppel, or consistency doctrine, is not applicable — Taxable value is determined as of a given tax lien date.*

(No. 2008-1035 — Submitted April 21, 2009 — Decided June 2, 2009.)

APPEAL from the Board of Tax Appeals, No. 2005-H-1436.

_____

**Per Curiam.**

**{¶ 1}** Appellant, M & B Olmsted, L.L.C., appeals from a decision of the Board of Tax Appeals ("BTA") that adopted an increased valuation of the property at issue. The BTA predicated the increase on an appraisal offered by the Olmsted Falls Board of Education ("school board") at the hearing before the Cuyahoga County Board of Revision ("BOR"). The BTA rejected the BOR's valuation of the property at $325,000 and adopted a true value of $1,200,000 for the tax year 2003, a figure that represents an increase of 369 percent over the $325,000 value that the BTA attached to the property for the tax year 2002. M & B Olmsted asserts that the BTA's determination of value should be reversed for two reasons: a lack of evidentiary support and inconsistency in the BTA's evaluation of appraisal evidence for successive tax years. Upon careful consideration of the record in the light of the appellant's contentions, we conclude that the BTA decision is reasonable and lawful and should be affirmed.

**Facts**

*Background*

{¶ 2}   At issue is the tax-year-2003 value of a 1.5674-acre parcel formed in 1998 when a larger tract was split into smaller lots. In September 1997, M & B Olmsted's predecessor, Olmsted Holdings, L.L.C., purchased the original 10-acre tract for $225,000.  At that time, the tract was improved with an aging middle-school complex consisting of a large two-story classroom building, two one-story classroom wings, and a gymnasium.  The lot split created, among other parcels, the parcel at issue:  a 1.5674-acre (68,258 square-foot) lot on which the two one-story classroom wings stood, and whose use as of the tax lien date was as a daycare center operated by the property owner.  The existing structures were renovated and joined together in a single building of 20,000 square feet.

{¶ 3}   For tax year 1998, the BTA adopted the September 1997 sale price of $225,000 as the value of the original 10-acre property. *Olmsted Holdings, L.L.C. v. Cuyahoga Cty. Bd. of Revision* (May 7, 2004), BTA Nos. 2002-M-2524, 2002-M-2546, 2002-M-2620, and 2002-M-2628 through 2632.  For tax year 1999, the BTA adopted the value as determined by the BOR, $140,000, after determining that the evidence presented by the school board did not justify a different value.  Id. at 15-16.

{¶ 4}   For the next tax year, 2000, the BOR valued the subject at $325,000, and the BTA reverted to that value after finding the school board's appraisal unreliable. *Olmsted Falls Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (June 11, 2004), BTA Nos. 2002-A-2617 and 2002-A-2618, at 11.  The value of $325,000 carried forward to 2001 and 2002 because the complaint for tax year 2000 was treated as a continuing complaint pursuant to R.C. 5715.19(D).  Id. at 4-5, 12.

{¶ 5}   The school board initiated the present case with a complaint against the county's valuation of the property for the 2003 tax year.  The auditor

had carried forward the $325,000 value to the 2003 year, and the school board sought an increase to $1,200,000. At the BOR, the school board presented the 1999 appraisal along with supplemental documentation of comparable sales.[1] The BOR retained the auditor's value, and the school board appealed to the BTA, which adopted the school board's proposed value of $1,200,000.

*Appraisal evidence in the previous cases*

**{¶ 6}** M & B Olmsted places at issue the BTA's consideration of the appraisal in this case with its consideration of the appraisals the school board had offered previously. In support of the school board's complaint for tax year 1999, the BTA considered an appraisal report authored and certified by James T. Caldwell and Timothy C. Nash, which was prepared on July 19, 2002. That appraisal relied exclusively on a sales-comparison approach to arrive at a value of $325,000 for tax year 1999. The BTA rejected the appraisal, stating that the school board's appraisers "failed to consider the recent, comparable sales" of the companion lots that had been subdivided out of the original 10-acre tract. *Olmsted Holdings, L.L.C. v. Cuyahoga Cty. Bd. of Revision* (May 7, 2004), BTA Nos. 2002-M-2524, 2002-M-2546, 2002-M-2620, and 2002-M-2628 through 2632, at 13, 15.

**{¶ 7}** In support of its complaint for tax year 2000, the school board presented a new appraisal report and the testimony of its author, Timothy Nash, at the BTA hearing. Nash's report opined a value of $460,000 for tax year 2000, $800,000 for tax year 2001, and $1,200,000 for tax year 2002. The appraisal relied on sales-comparison approaches to derive values for 2000 and 2001. For 2002, the report reconciled a sales-comparison approach yielding a value of

---

1. Counsel for the school board made reference to submitting additional information, which apparently consisted of new comparable sales, but the written record of the BOR proceedings that is before us does not contain that information.

$1,200,000, and an income-capitalization approach that generated a value of $1,215,000, concluding that the value of the property was $1,200,000.

**{¶ 8}** The BTA rejected this appraisal for several reasons. First, the board noted that the appraiser had not supplied interior photographs of the subject or the properties he utilized as comparable sales. Second, the board observed that the appraiser had not viewed the interiors of seven of the nine comparables. Third, the board faulted the appraiser for not verifying the terms of sales of the comparables or the status of their compliance with the requirements of the Americans with Disabilities Act and with zoning restrictions. Fourth, the appraiser did not supply information concerning the renovation costs of the property at issue and the comparables, which deprived his adjustments of adequate support. Finally, the board renewed the objection that the appraiser did not consider the sales of the companion parcels. *Olmsted Falls Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (June 11, 2004), BTA Nos. 2002-A-2617 and 2002-A-2618, at 9-10.

**{¶ 9}** With regard to the income-capitalization approach for tax year 2002, the board noted characteristics that called into question the comparability of the other properties as sources of rent. Id. at 11. Moreover, the board faulted Nash for not supplying information in support of vacancy/credit loss, expense, and capitalization rate. Id.

*Appraisal evidence in the present case*

**{¶ 10}** In the present case, Nash updated his report to opine a value of $1,200,000 for tax year 2003. Observing that Nash made no changes to the income-capitalization approach, the board declined to place any reliance on that portion of the appraisal. *Olmsted Falls Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (Apr. 29, 2008), BTA No. 2005-H-1436, at 9. With respect to the sales-comparison approach, the board noted that the appraisal still lacked internal photos and internal inspection by the appraiser. But the board found that Nash, by

4

contrast with the earlier appraisal, provided specific adjustments to account for the differences in the comparison properties, and the appraiser furnished more information generally, along with a number of additional comparable sales. Id. at 10.

**{¶ 11}** Also significant to the board was Nash's cost valuation of the land, which supported his conclusions, as well as the appraiser's testimony that the immediate area had become the focal point of the community as a result of the development of the adjacent parcels. Id. The BTA accordingly adopted the appraiser's valuation of the property at $1,200,000 for tax year 2003.

## Analysis

**{¶ 12}** Under our cases, " '[t]he BTA is responsible for determining factual issues and, if the record contains reliable and probative support,' " the court will affirm. *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14, quoting *Am. Natl. Can Co. v. Tracy* (1995), 72 Ohio St.3d 150, 152, 648 N.E.2d 483. On the other hand, the court " 'will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion.' " Id., quoting *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino* (2001), 93 Ohio St.3d 231, 232, 754 N.E.2d 789. Through its propositions of law, M & B Olmsted advances two interrelated arguments, both asserting legal error in the BTA's determination of value.

**{¶ 13}** First, M & B Olmsted argues that a principle of consistency from one tax year to the next precludes the BTA's determination in this case. Second, M & B Olmsted contends that the BTA's determination of value is not supported by the evidence, given the appraisal presented in this case and its relationship to a similar appraisal that the BTA previously had rejected as not probative. We find that neither argument entitles M & B Olmsted to a reversal of the BTA's decision.

*No doctrine of estoppel or consistency barred the BTA's determination*

{¶ 14} The value of the property as determined by the BTA rose from $325,000 for tax year 2002 to $1,200,000 for tax year 2003. M & B Olmsted argues that this precipitous increase in value is not supported by the record and that it contravenes legal principles.

{¶ 15} In its notice of appeal and its brief, M & B Olmsted first contends that estoppel bars the BTA's determination in this case. At oral argument, counsel conceded that the case does not present a "classic" type of estoppel. But the issue has been presented, and we therefore address it. We hold that collateral estoppel does not bar the board's determination of value in this case.

{¶ 16} First, we regard it as elemental that for purposes of any challenge to the valuation of real property, each tax year constitutes a new "claim" or "cause of action," such that the determination of value for one tax year does not operate as res judicata that would bar litigation of value as to the next tax year.[2] R.C. 5715.19(A) and (D) (complaint against valuation pertains to "current" tax year and any other years subject to "continuing complaint" rule); see *Std. Oil Co. v. Zangerle* (1943), 141 Ohio St. 505, 511, 514, 516, 26 O.O. 82, 49 N.E.2d 406 (language of Ohio statutes concerning determination of property value consistent with the proposition that "each year's taxes are the basis of a distinct and separate cause of action"); accord *Freshwater v. Belmont Cty. Bd. of Revision* (1997), 80 Ohio St.3d 26, 28-29, 684 N.E.2d 304.

{¶ 17} Second, M & B Olmsted frames its argument as involving an "estoppel." To be sure, we have acknowledged a narrow range of applicability for the doctrine of collateral estoppel in tax proceedings. See *Superior's Brand Meats, Inc. v. Lindley* (1980), 62 Ohio St.2d 133, 135-136, 16 O.O.3d 150, 403 N.E.2d 996. For purposes of collateral estoppel, the ultimate issue of tax value in

---

2. To be sure, under certain circumstances R.C. 5715.19(A)(2) precludes the filing of a second valuation complaint within the same triennium. But that constitutes a jurisdictional limitation on the filing of complaints and does not affect the operation of res judicata.

one tax year does not constitute the "same issue" as the ultimate issue of tax value in a different year. *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision* (Dec. 28, 1993), Franklin App. 92AP-1715, 1993 WL 540285, at *3; accord *Hubbard Press v. Tracy* (1993), 67 Ohio St.3d 564, 565, 621 N.E.2d 396 (new determination of the ultimate issue of exempt status of real property not precluded by contrary determination of that issue in a prior tax year). But the determination in an earlier year of a discrete factual/legal issue that is common to successive tax years may bar relitigation of that discrete issue in the later years. *Columbus Bd. of Edn.* at *3 (owner could not relitigate the issue of the arm's-length character of a particular sale of the property when the owner had litigated and lost that issue on a valuation complaint pertaining to a prior year).

{¶ 18} Applying these precepts, we conclude that M & B Olmsted's collateral estoppel theory must fail because the taxpayer mistakenly equates the ultimate issue of property value for tax year 2002 with the issue of value for tax year 2003 as if they were the "same issue." There is no collateral estoppel in this case.

{¶ 19} We now turn to the contention on which M & B Olmsted focuses its argument. Olmsted asserts first that the BTA is subject to a legal constraint of consistency when it determines the value of property in successive years: the determination of value for a later tax year may not deviate from the determination of value for an earlier tax year unless there is evidence showing a change of value from one year to the next. We disagree.

{¶ 20} As a matter of both case law and elementary principles, each tax year should be determined based on the evidence presented to the assessor that pertains to that year. We have so held in the past. See *Freshwater*, 80 Ohio St.3d at 29, 684 N.E.2d 304 ("When the BTA makes a determination of true value for a given year, such determination is to be based on the evidence presented to it in that case, uncontrolled by the value assessed for prior years"); *Fawn Lake Apts. v.*

*Cuyahoga Cty. Bd. of Revision* (1999), 85 Ohio St.3d 609, 612, 710 N.E.2d 681 (party that challenges the county's valuation at the BTA need not prove that determination of value as to earlier tax year was wrong because the "determination of taxable value as of a given tax lien date does not involve the valuation at a prior tax lien date").

{¶ 21} Moreover, our decision in *Freshwater* states the basic reason for this holding. To insist that the party who challenges the valuation of a parcel show a change from the value determined for a prior year would require that "the prior year's valuation should be deemed to be correct," and in actuality, it "may not be correct." 80 Ohio St.3d at 28, 684 N.E.2d 304. Quite simply, neither a board of revision, nor the BTA, nor this court has authority to adjudicate the value for a tax year that as a procedural matter, is not before the respective tribunal. See *Cleveland Mun. School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 105 Ohio St.3d 404, 2005-Ohio-2285, 827 N.E.2d 306, ¶ 14. To presume that the earlier year's value was correct while having no authority to determine its validity would interfere with the statutory mandate that the assessor should determine the *correct* value *as of the tax-lien date of the current tax year.* R.C. 5715.19(A)(1)(d) (valuation complaint pertains to "the current tax year"); *Olmsted Falls Village Assn. v. Cuyahoga Cty. Bd. of Revision* (1996), 75 Ohio St.3d 552, 555, 664 N.E.2d 922.

{¶ 22} The present case exemplifies the point. The appraiser noted that after the split of the larger tract into the current adjacent parcels in 1998, the city of Olmsted Falls established its municipal offices, its police station, and its jails on one of the parcels, while another adjacent parcel is occupied by a community center. As the appraiser testified, "Where this was just a closed school facility, it's now the focal point of the whole neighborhood and the focal point of Olmsted Falls." Although this development of the adjacent parcels was already in progress during earlier years, the appraiser did not adequately document the increase in

value of the parcel at issue. But once that sufficient documentation has been presented, the BTA must be free to draw the conclusions the evidence compels.

**{¶ 23}** Because it would interfere with the proper fact-finding function of the BTA, M & B Olmsted's consistency doctrine must be rejected.

*In weighing the evidence before it, the BTA is not bound by earlier decisions*

**{¶ 24}** M & B Olmsted also argues that we should not defer to the BTA's evaluation of the evidence in this case because of the way it evaluated evidence on previous valuation complaints. In essence, M & B Olmsted contends that with regard to how it evaluates the evidence of value before it, the BTA is subject to a legal constraint of consistency from one tax year to the next.

**{¶ 25}** We disagree. To impose such a consistency requirement would impair the BTA's plenary authority as a fact-finder to evaluate evidence.[3] To be sure, consistency in the manner of evaluating evidence is desirable. But the concern for consistency is overridden by the imperative that the BTA correctly determine value in the case before it. To impose a consistency requirement would unduly inhibit the BTA's power to correct erroneous determinations it had made on earlier occasions.

**{¶ 26}** In disposing of M & B Olmsted's contentions in this regard, we adhere firmly to two well-settled precepts. First, we " 'will not reverse the BTA's determination on credibility of witnesses and weight given to their testimony unless we find an abuse of * * * discretion.' " *Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 112 Ohio St.3d 309, 2007-Ohio-6, 859 N.E.2d 540, ¶ 15 ("*Strongsville* (2007)"), quoting *Natl. Church Residence v. Licking Cty. Bd. of Revision* (1995), 73 Ohio St.3d 397, 398, 653 N.E.2d 240. A mere allegation of inconsistency from one tax year to the next does not state a claim

---

3. We make no comment as to whether the BTA in fact applied different standards for evaluating the evidence in different tax years. We acknowledge that an intentional and arbitrary application

that discretion has been abused, because it is well settled that abuse of discretion requires the claimant to show an " 'attitude [that] is unreasonable, arbitrary or unconscionable.' " *J.M. Smucker, L.L.C. v. Levin*, 113 Ohio St.3d 337, 2007-Ohio-2073, 865 N.E.2d 866, ¶ 16, quoting *Strongsville Bd. of Edn. v. Zaino* (2001), 92 Ohio St.3d 488, 490, 751 N.E.2d 996.

{¶ 27} Second, "[w]ith respect to the valuation of real property, it is the 'BTA's task * * * to determine the fair market value of the property,' and that issue is 'a question of fact, the determination of which is primarily within the province of the taxing authorities.' " *Strongsville* (2007), at ¶ 22, quoting *DAK, PLL v. Franklin Cty. Bd. of Revision*, 105 Ohio St.3d 84, 2005-Ohio-573, 822 N.E.2d 790, ¶ 14. In the present case, the BTA determined that a portion of the appraisal evidence was probative of value for tax year 2003, even though similar evidence was not probative of value in prior years. The record shows at least some distinctions in the nature of the evidence presented, and we will not second-guess the precise weight that the BTA accords to each increment of evidence when it determines the value of real property. As in *Strongsville* (2007), we find that deference is proper because the BTA did not abuse its discretion in reaching its decision.

### Conclusion

{¶ 28} For all the foregoing reasons, the BTA's decision was reasonable and lawful, and we affirm it.

Decision affirmed.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, LANZINGER, and CUPP, JJ., concur.

PFEIFER and O'DONNELL, JJ., dissent.

_____

of different standards in different cases would raise the question whether the BTA had abused its discretion. We see nothing in the present record, however, that raises such concerns.

**PFEIFER, J., dissenting.**

{¶ 29} For each year since 1997, when the parcel at issue was sold as part of a larger tract to its current owner, the Board of Tax Appeals ("BTA") has determined the value of the parcel. For 1999, that value was $140,000; for 2000, 2001, and 2002, it was $325,000. In each of those years, the school board presented an appraisal by Timothy Nash, and for each of those years, the BTA rejected the use of the appraisal. Then, in 2003, for the tax year at issue in this case, the BTA surprisingly finds persuasive a modified version of the same appraisal and adopts a value of $1,200,000.

{¶ 30} This background suggests that something has gone wrong. Indeed it has. Although the majority correctly concludes that this case does not involve collateral estoppel or a presumption of validity as to a prior year's valuation, the case does involve the BTA improperly ignoring its own previous findings on specific issues that pertain to the value of the parcel at issue.

{¶ 31} First, the BTA decision that addresses the 1999 tax year specifically notes that the buildings on the original tract needed asbestos remediation, and there is no proof that that has occurred. *Olmsted Holdings, L.L.C. v. Cuyahoga Cty. Bd. of Revision* (May 7, 2004), BTA Nos. 2002-M-2524, 2002-M-2546, 2002-M-2620, and 2002-M-2628 through 2002-M-2632, at 4. Second, with respect to tax year 2002, the BTA specifically held that the school board's appraisal was not credible because the appraiser had not inspected the interior of most of the comparables. *Olmsted Falls Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (June 11, 2004), BTA Nos. 2002-A-2617 and 2002-A-2618, at 9-10. This constitutes a serious objection both in other decisions of the BTA and in the appraisal profession generally. See *Medusa Assoc. Ltd. v. Cuyahoga Cty. Bd. of Revision* (May 18, 2007), BTA No. 2005-A-490, at 9; Appraisal Institute, The Appraisal of Real Estate (13th Ed.2008) 233. Even though this deficiency persisted in the appraisal for tax year 2003, the BTA refused to attach the same

significance to it.  *Olmsted Falls Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (Apr. 29, 2008), BTA No. 2005-H-1436, at 9-10.

{¶ 32} These circumstances persuade me that the BTA has erred in valuing the property for tax year 2003.  I would reverse and remand with instructions to retain the board of revision's valuation of $325,000.  I therefore respectfully dissent.

O'DONNELL, J., concurs in the foregoing opinion.

_____

Kolick & Kondzer, Thomas A. Kondzer, and John Desimone, for appellee Olmsted Falls Board of Education.

Sleggs, Danzinger & Gill Co., L.P.A., and Todd W. Sleggs, for appellant.

_____