PROGRESSIVE PLASTICS, INC., APPELLANT, *v.* TESTA, TAX COMMR., APPELLEE.

[Cite as *Progressive Plastics, Inc. v. Testa,*

133 Ohio St.3d 490, 2012-Ohio-4759.]

*Taxation—Personal property—Valuation—R.C. 5711.18 and 5711.21—Tax commissioner erred in substituting FIFO method of accounting of computing value for taxpayer's LIFO method when no administrative rule permitted substitution and no taxpayer-specific evidence existed to justify overriding taxpayer's choice of method—Tax commissioner cannot confer force of law on particular accounting method without promulgating administrative rule.*

(No. 2011-1793—Submitted September 12, 2012—Decided October 17, 2012.)

APPEAL from the Board of Tax Appeals, No. 2008-A-241.

_____

**Per Curiam.**

{¶ 1} In this appeal, Progressive Plastics, Inc. ("PPI") challenges the tax commissioner's decision to increase PPI's personal property tax assessments for 2004 and 2005. In amending the assessments, the commissioner recomputed the value of PPI's inventory based on the FIFO (first in, first out) accounting method rather than the LIFO (last in, first out) method, which PPI had used on its books. The Board of Tax Appeals ("BTA") affirmed the commissioner's amended assessments, and PPI's main contention here is that the commissioner lacked an individualized evidentiary basis for issuing and upholding the amended assessments against PPI. As a result, the assessments were, in PPI's view, illegal and did not invoke a presumption of validity at the BTA. Additionally, PPI challenges the BTA's finding that collateral estoppel barred PPI's FIFO/LIFO

claim on the grounds that the issue had already been litigated and decided against PPI in the tax-year 2003 proceedings.

{¶ 2} Because 2004 and 2005 were separate and distinct tax years presenting potentially different facts from tax year 2003, we disapprove the BTA's determination that collateral estoppel applied to PPI's appeal for the 2004 and 2005 tax years. On the merits, we conclude that the BTA erred by upholding the commissioner's assessments for the tax years before us. Namely, the tax commissioner substituted FIFO for LIFO based not upon the content of the taxpayer's return or taxpayer-specific evidence, but rather upon a general proposition that FIFO should be used to value inventory. Consistent with R.C. 5711.18, R.C. 5711.21, and the general proposition that the tax commissioner cannot confer the force of law on an accounting method without promulgating it as an administrative rule, we hold that the substitution of FIFO for LIFO was impermissible under the circumstances of this case. We therefore reverse the decision of the BTA.

## I. FACTUAL BACKGROUND

{¶ 3} In dispute is whether the tax commissioner was justified, when auditing PPI's property tax returns, in substituting FIFO (the first-in, first-out method of accounting for inventory) for LIFO (the last-in, first-out method). These methods are two of the four accepted methods of assigning value to inventory items for accounting purposes. *See* Larson & Miller, *Fundamental Accounting Principles* 486-490 (13th Ed.1993). Unlike "specific-invoice inventory pricing" or "average inventory pricing," FIFO and LIFO each assume that inventory is reduced in a particular order in relation to acquisition or manufacture of the items. *Id*. FIFO assumes that "the items in the beginning inventory are to be sold first," with additional sales being made in the order that the items were acquired. *Id*. at 488. By contrast, LIFO makes the opposite

assumption: under LIFO, "the cost of the last goods received are charged to cost of goods sold and matched with revenue from sales." *Id*. at 489.

**A. The commissioner's substitution of FIFO for LIFO in computing inventory value for tax year 2003 was upheld by the Eighth District**

{¶ 4} The issuance of amended assessments for 2004 and 2005 occurred against the backdrop of the commissioner's audit and review for tax year 2003, and the statutory transcript reflecting the 2003 tax-year proceedings before the tax department has been made part of the record of this case. In that case, the tax audit agent's remarks referred to the 1986 Ohio Personal Property Tax Manual for the proposition that, because "the effect of LIFO is to assign old costs to new inventory, it is not acceptable for reporting inventory values for property tax purposes." Under the heading "Conclusion and Reasons," the agent stated that he had "added the LIFO Reserve back into the computation of inventories for each month in the audit period," noted that the "ultimate goal of the assessment is a determination of the true value of the property taxed," and stated that the LIFO method "can give rise to an unrealistic picture of inventory value."

{¶ 5} On June 22, 2006, the commissioner issued his final determination for tax year 2003, in which he addressed PPI's contention that the substitution of FIFO for LIFO was unjustified. In that determination, the commissioner observed that under LIFO, "the last items purchased are considered to be sold first, leaving older inventory items as considered unsold and comprising the value of inventory on hand." Because of this, the commissioner reasoned that the LIFO method did not properly value the inventory because "the most recent purchases of inventory are a more accurate indicia [sic] of true value as such purchases were made closer to the tax listing date than the older purchases * * *."

{¶ 6} PPI appealed the tax-year 2003 determination to the BTA, which affirmed the commissioner, noting that the "critical inquiry" for purposes of personal property tax is the "value of the inventory on hand." *Progressive*

3

*Plastics, Inc. v. Wilkins*, BTA No. 2006-M-1043, 2008 WL 2072355, *2 (May 13, 2008). Citing and relying on *Champion Spark Plug Co. v. Lindley*, 6 Ohio St.3d 56, 451 N.E.2d 514 (1983), the BTA rejected PPI's contention that the commissioner had to accept book value in the absence of a finding, based on evidence specific to the taxpayer, that book value did not reflect the true value of the assets.

{¶ 7} The BTA considered the affidavit of PPI's chief operating officer, who stated that based on his knowledge of PPI's inventory flow, "the true value of Progressive Plastics inventory is not based exclusively on the FIFO valuation method."[1] *Id*. at *5. The BTA accorded little weight to this testimony because PPI did not provide corroborating evidence. Accordingly, the BTA affirmed the FIFO/LIFO aspect of the commissioner's final determination in the tax-year 2003 case.

{¶ 8} PPI then appealed the BTA's decision in the 2003 tax-year case to the Eighth District Court of Appeals. On April 30, 2009, that court issued a decision affirming the BTA. *Progressive Plastics, Inc. v. Levin*, 8th Dist. No. 91614, 2009-Ohio-2033. With respect to the FIFO/LIFO issue, the court observed that, because LIFO assumes that the last merchandise purchased or manufactured is sold before the sale of the older merchandise in stock is sold, and because FIFO relies on the opposite assumption, "FIFO generally better reflects the current replacement costs of the inventory than LIFO because the average inventory values under the FIFO method will be based on the acquisition costs of the most newly acquired inventory, rather than the earliest acquired inventory."

---

1. In the 2003 tax-year case, PPI did not present witnesses and exhibits at a BTA hearing, but chose instead to rely on the existing record, supplementing it by submitting the depositions of one former and one current tax agent. When PPI later appealed the commissioner's determination of the 2004 and 2005 tax-year assessments to the BTA, PPI again presented no witnesses or exhibits. To make the record complete, the tax commissioner—in addition to certifying the statutory transcript for the later tax years—also submitted a supplemental transcript containing, in PDF format, the record from the 2003 tax-year case.

*Id.* at ¶ 2, fn. 1.  Based on the case law, the appeals court rejected PPI's theory that a departure from book value must be justified by evidence relating to the particular taxpayer.  The appeals court also brushed aside PPI's contention that the commissioner had made no proper finding, holding that the final determination's assertion of the usual superiority of FIFO as an indicator of value constituted such a finding.  PPI attempted a further appeal, but this court declined to accept jurisdiction.  *Progressive Plastics, Inc. v. Levin*, 123 Ohio St.3d 1408, 2009-Ohio-5031, 914 N.E.2d 205.

### B.  The 2004 and 2005 tax-year assessments

**{¶ 9}**   Against the backdrop of the commissioner's audit and review for tax year 2003, the commissioner issued amended preliminary assessments in the current case for tax years 2004 and 2005.

**{¶ 10}** For both tax years, PPI submitted its county return of taxable personal property, which listed an average value of manufacturing inventory of $2,499,652 and $2,521,590, respectively, in accordance with the LIFO method.  Once the assessment percentage of 23 percent was applied, the returns reported a listed value of $563,420 and $579,966, respectively.

**{¶ 11}** Substituting FIFO for LIFO, the tax commissioner issued amended preliminary assessment certificates for both tax years on July 21, 2006.  For each tax year the amended assessment recomputed the value of PPI's manufacturing inventory and thereby increased the actual assessed values of that inventory to $810,140 and $915,370—an increase of 43 percent for 2004 and 58 percent for 2005.  PPI contested the commissioner's action by filing its petition for reassessment (covering both years) on September 22, 2006.

**{¶ 12}** During the audit for 2004 and 2005, PPI asked that the commissioner postpone action for those years pending final disposition of litigation concerning the 2003 tax year.  The commissioner, facing the statutory deadline for completing the tax-year 2004 assessment, declined to do so.  *See*

R.C. 5711.25 (the preliminary or amended assessment certificate issued by the tax commissioner becomes final on the second Monday of August of the second year after filing the return).  The tax commissioner's agent accordingly proceeded to complete the assessment based on information already in the commissioner's possession.  The agent estimated LIFO reserves for later years based on a percentage extrapolated from earlier years.

### C.  The final determination and the BTA appeal for 2004 and 2005

{¶ 13} On December 26, 2007, the commissioner issued his final determination in the present case, which rejected PPI's argument that its LIFO accounting should be used to value inventory for tax years 2004 and 2005.  The final determination again emphasized the superiority of FIFO for purposes of determining inventory value.  PPI again appealed to the BTA, which issued its decision on September 20, 2011.  *Progressive Plastics, Inc. v. Levin*, BTA No. 2008-A-241, 2011 WL 4437290 (Sept. 20, 2011).  In that decision, the BTA (1) rejected PPI's contention that the commissioner may not rely on findings and evidence generated during the audit of a prior tax year, *id.* at *2, (2) reiterated its 2003 tax-year finding that PPI "did not provide this board with any corroborating evidence demonstrating its personal property's value in conjunction with the description of its business practices," *id*. at *3, and (3) held that collateral estoppel barred relitigation of the FIFO/LIFO issue.  *Id.* at *4.  The BTA affirmed the commissioner's final  determination, and PPI appealed.  We now reverse.

### II.  LEGAL ANALYSIS

{¶ 14} The fair market value of property for tax purposes has been held to present " ' "a question of fact, the determination of which is primarily within the province of the taxing authorities, and this court will not disturb a decision of the Board of Tax Appeals with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable and unlawful." ' " *Rich's Dept. Stores, Inc. v. Levin*, 125 Ohio St.3d 15, 2010-Ohio-957, 925 N.E.2d

951, ¶ 13, quoting *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, ¶ 17, quoting *Cuyahoga Cty. Bd. of Revision v. Fodor*, 15 Ohio St.2d 52, 239 N.E.2d 25 (1968), syllabus. Moreover, the tax commissioner's findings " 'are presumptively valid, absent a demonstration that those findings are clearly unreasonable or unlawful.' " *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 15, quoting *Nusseibeh v. Zaino*, 98 Ohio St.3d 292, 2003-Ohio-855, 784 N.E.2d 93, ¶ 10.

{¶ 15} PPI confronts the court, however, with a claim of legal error involving the proper construction and application of R.C. 5711.18 and 5711.21. A dispute over the meaning of statutes presents a question of law, and our review in that regard is not deferential but de novo. *Akron Centre Plaza, L.L.C. v. Summit Cty. Bd. of Revision*, 128 Ohio St.3d 145, 2010-Ohio-5035, 942 N.E.2d 1054, ¶ 10.

### A. Collateral estoppel did not bar PPI's challenge in this case

{¶ 16} PPI's third proposition of law challenges the BTA's decision to apply collateral estoppel as a bar to its FIFO/LIFO claim. The tax commissioner concedes that the BTA's determination is incorrect in this regard, and we agree.

{¶ 17} We have acknowledged "a narrow range of applicability of collateral estoppel in tax proceedings." *Olmsted Falls Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision,* 122 Ohio St.3d 134, 2009-Ohio-2461, 909 N.E.2d 597, ¶ 17. Collateral estoppel "precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action." *Whitehead v. Gen. Tel. Co.*, 20 Ohio St.2d 108, 112, 254 N.E.2d 10 (1969). But the estoppel operates "only when there is an identity of issues and an identity of parties or their privies in both the first and the second suit." *Id*. at 113.

{¶ 18} As for the identity of issues, our decision in *Olmsted Falls* is completely dispositive: there, we stated that "the ultimate issue of tax value in one tax year does not constitute the 'same issue' as the ultimate issue of tax value

in a different year" for purposes of applying collateral estoppel. *Olmsted Falls* at ¶ 17. By that logic, the ultimate issue of inventory value for tax year 2003 is not the same issue as the issue of inventory value in 2004 and 2005, and collateral estoppel simply does not apply. Quite simply, each tax year may or may not present a different set of facts from those presented for any other tax year, with the result that the determination of facts for one year does not preclude a determination of new facts for the other year.[2]

**B. The commissioner may not broadly require the use of a particular accounting convention to value property except through a rule**

{¶ 19} Because the BTA held that PPI's FIFO/LIFO argument was barred by collateral estoppel, it did not subject the claim to the fuller analysis it employed in the 2003 tax-year case. But the BTA did find that for 2004 and 2005 as well as for 2003, PPI "did not provide this board with any corroborating evidence demonstrating its personal property's value in conjunction with the description of its business practices." BTA No. 2008-A-241, 2011 WL 4437290, *3. Thus, the BTA found that the burden lay on PPI to rebut the commissioner's assessment and that PPI had not made an affirmative showing that its inventory was entitled to a lower valuation. Accordingly, given the following analysis, there is no need to remand to afford the BTA the opportunity to make any further findings.

*1. R.C. 5711.18's presumption in favor of book value does not permit a "finding" that merely substitutes one accounting method for another*

{¶ 20} R.C. 5711.18 establishes that the taxpayer's depreciated book value is the starting point for valuing manufacturing inventory: indeed, book value "*shall be taken as the true value of such property*, unless the assessor [i.e.,

---

2. The tax commissioner seeks to substitute stare decisis for collateral estoppel, but no analysis of this point is necessary inasmuch as the BTA did not address it, and neither the BTA decision nor the court of appeals judgment furnishes binding precedent at this court.

the tax commissioner] finds that such depreciated book value is greater or less than the then true value of such property in money." (Emphasis added.) Having set forth a mandate, the statute then provides for an exception: if the assessor "finds" that the value on the books does not reflect true value, a different value may be substituted.

{¶ 21} R.C. 5711.18 raises the crucial question for this case: under what circumstances may a different value be substituted for book value? R.C. 5711.21(A) furnishes the answer to that question: the tax assessor's finding under R.C. 5711.18 must "be guided by the statements contained in the taxpayer's return and such other rules and evidence as will enable the assessor to arrive at such true value." Additionally significant is R.C. 5711.09: that section charges the tax commissioner with administering the personal property tax and prescribes that he "may adopt and promulgate rules" in relation to his duties as administrator of the personal property tax.

{¶ 22} In the present case, the commissioner cited neither an administrative rule nor any content of PPI's returns in support of substituting FIFO for LIFO, as contemplated by R.C. 5711.21. PPI contends that, as a result, "the burden [was] upon the Tax Commissioner to make a finding, supported by evidence pertinent to the taxpayer, that the book value of the inventory as reported by the taxpayer is not the true value of that inventory." In PPI's view the commissioner, by relying on a general accounting proposition rather than on a rule or on specific evidence, failed to comply with R.C. 5711.18 and 5711.21(A).

{¶ 23} In response, the commissioner argues that he may make a "finding" under R.C. 5711.18 based upon his "expert judgment" that the FIFO method of valuation is a better indicator of the value of PPI's inventory than LIFO. As discussed in the fact section above, PPI demonstrated that the tax audit did not rely on PPI-specific data in substituting FIFO for LIFO, but on a general principle broadly applied to taxpayers that has not been adopted as an

administrative rule. At oral argument, the commissioner's counsel characterized the taxpayer's use of LIFO on its personal property tax return as a "red flag" that triggered the substitution of FIFO absent a contrary showing by the taxpayer. That is, the commissioner's approach was to presume the propriety of substituting FIFO and, as counsel stated it, to place the burden on PPI to "show us that LIFO is appropriate here."

**{¶ 24}** We agree with PPI that the substitution of FIFO for LIFO exceeded the commissioner's authority under R.C. 5711.18 and 5711.21 in the circumstances presented in this case. The presumption dictated by R.C. 5711.18 is that the taxpayer's books, kept in accordance with accepted accounting principles, establish the value of the inventory. Consistent with R.C. 5711.21, a departure from that book value may be justified based on the content of the taxpayer's returns, the language of an administrative rule, or other evidence. Nothing in this scheme, however, permits the commissioner to raise a presumption that an accounting convention *not* used by the taxpayer better estimates value than the one the taxpayer did use, thereby placing a burden of rebuttal on the taxpayer.

**{¶ 25}** The case law supports this analysis. In *PPG Industries, Inc. v. Kosydar*, 65 Ohio St.2d 80, 83, 417 N.E.2d 1385 (1981), the tax commissioner confronted a similar question of valuing manufacturing inventory on audit. The taxpayer reported value using the same method it used in keeping its books, a method that excluded certain indirect factory overhead costs. But the commissioner determined that those costs must be included and recomputed the taxpayer's tax liability, assessing a higher amount. This approach reflected the "absorption" method rather than the variable costing convention employed by the taxpayer. When the taxpayer appealed, the BTA affirmed, but on further appeal, the Tenth District Court of Appeals reversed. The court of appeals held that "in the absence of an applicable rule or evidence to the contrary, the tax

commissioner and the Board of Tax Appeals must accept the statements contained in the taxpayer's return" on the grounds that "there would be no basis to find the statements in the return to be inaccurate." *PPG Industries, Inc. v. Kosydar*, 10th Dist. Nos. 79AP-139 through 79AP-142, 1979 WL 209569, *6 (Dec. 28, 1979).

{¶ 26} The tax commissioner appealed, and we defined the issue as "whether the variable costing method employed by PPG is an acceptable indicator of true value for Ohio personal property tax purposes." 65 Ohio St.2d at 81, 417 N.E.2d 1385. A rule adopted by the tax commissioner required use of the "full absorption" method of accounting when valuing inventory, but *that language was not part of the rule during the tax years at issue*. *Id*. We held that the taxpayer, unconstrained by the administrative rule during the relevant period, was "not required to adopt the full absorption method of inventory valuation." *Id*. Thus, under R.C. 5711.18, "[t]he statements in the taxpayer's returns, being unrebutted, must be accepted by the commissioner." *Id.* at 82. Hence, we affirmed the court of appeals's disposition of the issue. *Id.* at 82-83.

{¶ 27} By the same logic, PPI must prevail in the present case. PPI used an accepted accounting method, LIFO, for its manufacturing inventory, and that method becomes binding in the absence of a rule or of particularized findings based on specific evidence, be it of the taxpayer's operations or of market conditions.

{¶ 28} The tax commissioner and the BTA placed heavy reliance on *Champion Spark Plug Co. v. Lindley*, 6 Ohio St.3d at 58, 451 N.E.2d 514. That case does involve manufacturing inventory, and we did uphold the substitution of FIFO for LIFO in *Champion*. However, the BTA in that case had affirmed the commissioner's use of FIFO based on actual evidence of inventory flow, and this court found the BTA's decision to be reasonable and lawful in that regard. The taxpayer argued that book value "constitutes prima facie evidence of true value which [the tax commissioner] must either accept or overcome through the

production of evidence to the contrary," *id*. at 57, and under the circumstances of that case, we resolved the issue against the taxpayer.

**{¶ 29}** But although *Champion* was decided after *PPG Industries*, and although the taxpayer specifically argued that substituting FIFO for LIFO "is not such a finding as is required by Revised Code section 5711.18 to overcome the book value reported by the taxpayer," we did not address, much less embrace or refute that argument. Instead, we relied on the totality of the record as substantiating the tax commissioner's assessment. Indeed, *Champion* does not cite *PPG Industries*, let alone overrule it.[3] It follows that where, as here, the commissioner relies on the asserted superiority of one accounting convention for determining value, over the convention used by the taxpayer, his position must fail under *PPG Industries*.

### 2. The tax commissioner may require the substitution of a more accurate accounting convention by administrative rule

**{¶ 30}** In holding that the commissioner cannot substitute accounting methods, we acknowledge that the commissioner's preference for FIFO over LIFO in valuing inventory is by no means arbitrary. Indeed, it is a commonplace that FIFO is an "acceptable measure of inventory replacement cost" because "[p]rices most recently paid are a better indication of replacement cost than are prices from months, even years, earlier," while LIFO is "less acceptable" because

---

3. *Champion* cites *Youngstown Sheet & Tube Co. v. Kosydar*, 44 Ohio St.2d 96, 338 N.E.2d 366 (1975), for the proposition that "the taxpayer's book value of its inventory is merely evidence of true value and will be taken as prima facie evidence of true value only when the Tax Commissioner has failed to find that such book value is greater or less than true value in money of the property." *Id*., paragraph two of the syllabus. In *Youngstown Sheet & Tube,* the BTA, faced with a "battle of the experts," resolved the case in favor of the taxpayer. We affirmed. Likewise, in *R.H. Macy Co., Inc. v. Schneider*, 176 Ohio St. 94, 197 N.E.2d 807 (1964), we affirmed the BTA's decision in a context where the BTA had evidence before it showing the inventory computed by both the LIFO and the retail-inventory methods. The BTA determined that true value was the amount determined by the retail-inventory method, and we held in essence that the BTA's decision was neither arbitrary, unreasonable, nor unlawful. *Id*. at 97-98. Neither case explicitly endorsed the general substitution of one accounting convention for another.

"it does not reflect inventory value for property tax purposes." IAAO, *Property Assessment Valuation* 368 (2d Ed.1996).

{¶ 31} However, the commissioner "cannot confer the force of law on a requirement without promulgating it as a rule," *HealthSouth Corp. v. Testa*, 132 Ohio St.3d 55, 2012-Ohio-1871, 969 N.E.2d 232, ¶ 33, citing *McLean Trucking Co. v. Lindley*, 70 Ohio St.2d 106, 114-116, 435 N.E.2d 414 (1982), and *Condee v. Lindley*, 12 Ohio St.3d 90, 92-93, 465 N.E.2d 450 (1984). Accordingly, we hold that the commissioner must promulgate an administrative rule to require the use of a particular accounting convention as a matter of course. A notable example is the commissioner's "302 computation": even though that method "prescrib[es] annual depreciation rates *in lieu of book depreciation* for Ohio personal property tax purposes" (emphasis added), we have repeatedly upheld that method as " 'a practical, reasonable and lawful method and device to achieve uniform valuation of plant equipment in Ohio.' " *WCI Steel, Inc. v. Testa*, 129 Ohio St.3d 256, 2011-Ohio-3280, 951 N.E.2d 421, ¶ 23, quoting *PPG Industries*, 65 Ohio St.2d at 83, 417 N.E.2d 1385. Unlike the substitution of FIFO for LIFO, however, the commissioner has exercised his rulemaking authority to confer proper legal status on the 302 computation. *Compare* Ohio Adm.Code 5703-3-10 and 5703-3-11, which expressly adopt the "302 computation" method for valuing depreciable tangible personal property used in business, *with* 5703-3-27, which is silent as to the method to be used for valuing the average inventory of a manufacturer.

### 3. The record does not negate PPI's use of LIFO

{¶ 32} The commissioner also asserts that the substitution of FIFO is justified because the evidence shows that FIFO better reflects PPI's actual inventory flow. In particular, the commissioner points to an internal PPI memorandum that states: "Even though LIFO is used for balance sheet valuation of inventories, our company uses raw materials and ship [sic] finished goods on a

first-in, first-out (FIFO) basis."[4]    But the commissioner is wrong.  Actual inventory flow is neither dispositive of the propriety of using LIFO on the books of the business nor determinative of which accounting convention reflects value. *See* Larson & Miller at 489; *Property Assessment Valuation* at 368.

### III.  CONCLUSION

{¶ 33} For the foregoing reasons, the BTA erred by upholding the tax commissioner's use of FIFO for 2004 and 2005.  We therefore reverse that portion of the BTA's decision.  Unaffected by our holding is the remainder of the BTA's decision, which PPI did not challenge on appeal.

Decision reversed.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Corsaro & Associates Co., L.P.A., Christian M. Bates, and Joseph G. Corsaro, for appellant.

Michael DeWine, Attorney General, and Daniel W. Fausey, Assistant Attorney General, for appellee.

_____

---

4. Under its second proposition of law, PPI contends that the tax commissioner "cannot rely on information obtained through a prior year's audit to assess additional tax for a subsequent year" because each tax year "stands on its own."  PPI cites *Olmsted Falls Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision,* 122 Ohio St.3d 134, 2009-Ohio-2461, 909 N.E.2d 597, and *Fogg-Akron Assoc., L.P. v. Summit Cty. Bd. of Revision*, 124 Ohio St.3d 112, 2009-Ohio-6412, 919 N.E.2d 730.  Both cases address the question whether presumptive validity may be accorded to a prior year's valuation.  Using evidence from a prior year is a completely different issue.