[Cite as *Madison Route 20, L.L.C. v. Lake Cty. Bd. of Revision*, 2014-Ohio-3183.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| MADISON ROUTE 20, LLC, et al., | : | **O P I N I O N** |
| Appellants, | : | |
| - vs - | : | **CASE NO. 2013-L-019** |
| LAKE COUNTY BOARD OF REVISION, et al., | : | |
| | : | |
| Appellees. | : | |
| | : | |

Appeal from the Ohio Board of Tax Appeals, Case No. 2009-Q-2207.

Judgment: Reversed and remanded.

*Jodi Littman Tomaszewski* and *Joshua J. Strickland,* Dworken & Bernstein Co., L.P.A., 60 South Park Place, Painesville, OH 44077 (For Appellants).

*Charles E. Coulson*, Lake County Prosecutor, and *Gianine A. Germano*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Appellees Lake County Board of Revision and Lake County Auditor).

*Elizabeth Grooms Taylor* and *Tad Orval Hoover,* 527 Portage Trail, Cuyahoga Falls, OH 44221 (For Appellee Willoughby-Eastlake City School District Board of Education).

*Jennifer A. Antoon,* Brindza, McIntyre & Seed, LLP, 1111 Superior Avenue, Suite 1025, Cleveland, OH 44114 (For Appellee Mentor Exempted Village School District Board of Education).


TIMOTHY P. CANNON, P.J.

{¶1} Appellants, Madison Route 20, LLC ("Madison"), and Midway Industrial

Campus, Ltd. ("Midway"), appeal from the decision and order of the Ohio Board of Tax

Appeals, affirming the decision of the Lake County Board of Revision regarding the valuation of appellants' real property. At issue is whether appellants established that certain real property it owns should be valued at $0.00 ("zero") for purposes of assessing property taxes. Appellants assert the property contains wetland areas and that they have been issued a cease and desist order by the Army Corps of Engineers restricting the use of the applicable wetland areas. For the following reasons, we reverse the decision of the Board of Tax Appeals and remand the case for proceedings consistent with this opinion.

{¶2} On March 31, 2009, appellants filed separate complaints with the Lake County Board of Revision ("BOR") regarding their 2008 real property tax valuations for multiple parcels of real property. In each of the complaints, appellants asserted that the valuation should have been zero, because the properties have "no marketability."[1]

{¶3} The subject parcels were part of an approximately 215- to 250-acre area of land located in Willoughby and Mentor, Ohio, which appellants planned to develop for commercial purposes. In 2004, however, appellants received a cease and desist order for all activities within "Waters of the United States" from the Army Corps of Engineers, due to the alleged destruction of wetland areas in violation of federal laws. The complaints asserted that the property had been devaluated due to this order.

{¶4} Appellees, the Mentor Exempted Village School District Board of Education and the Willoughby-Eastlake City School District Board of Education, filed counter-complaints, asserting that the valuation of the property was correct.

---

1. The Madison Parcels were given a fair market value of over $400,000 in 2008 and over $700,000 in 2009. The Midway Parcels were given a 2008 value of over $1.8 million and a value of almost $1.6 million in 2009.

{¶5} During the BOR hearings on this matter, appellants argued that the property value should be reduced to a nominal or zero value based on the Army Corps of Engineers' restrictions on the property. Eric Calabrese, identified as a representative/agent of appellants, testified that appellants purchased the property around the year 2000 with the intent of jointly developing it for commercial purposes. He further testified they were unable to proceed with development because of the 2004 cease and desist order issued by the Army Corps of Engineers.

{¶6} The cease and desist letter was presented as evidence. This letter stated that the area of concern includes "approximately 250 acres of property" and that work had taken place in areas designated as federal wetlands located within the property without proper authorization from the Army Corps. Based on the history of the project as set forth in the letter, the chief of the enforcement division indicated it appeared to be "a knowing and wilfull violation of Federal Law." As a result, the Army Corps ordered the property owners to "cease and desist all activities within Waters of the United States at this site." There is no indication in the letter what portion of the 250 acres the Army Corps considered to be "within Waters of the United States."

{¶7} Calabrese testified that the property owners believe this order prevented essentially any activity on the property, including development and construction, and that the property could not be sold under this order. He also explained that appellants had been unsuccessful in having the order lifted. He believed the property was worth either zero or "close to zero."

3

{¶8} The Mentor Exempted Village School District Board of Education presented an exhibit including the sales prices of various vacant industrial lots located in Mentor/Painesville Township, which did not have a similar wetland condition.

{¶9} The BOR issued decisions on August 11, 2009, in which it declined to adjust the appraised valuations of the parcels.

{¶10} Appellants subsequently filed separate complaints on March 30, 2010, for the 2009 tax year. A hearing was held on July 27, 2010, at which Calabrese gave similar testimony regarding the value of the property and the property owners' inability to proceed with development and construction. Appellees presented a 2006 appraisal valuing a portion of appellants' property, which included over 102 acres, at $13.15 million. The appraisal, however, was based on the assumption that no wetlands existed on the property which would negatively impact its value.

{¶11} On August 4, 2010, the BOR again declined to adjust the value of the parcels. Appellants appealed both the 2009 and 2010 BOR decisions to the Ohio Board of Tax Appeals ("BTA"), and the appeals were consolidated.

{¶12} A hearing was held before the BTA on June 4, 2012. Calabrese was the only witness and provided testimony which was similar to that given before the BOR. Calabrese stated he was a "member of the [appellants'] entity." He asserted there had been no resolution of the wetlands matter, although appellants took actions to overturn the determination of the Army Corps of Engineers. He explained that, in his opinion, the property was worthless. Calabrese stated that he did not believe the entire property was a wetland and that he had no documentation from the government stating it believed the entire area was a wetland.

4

{¶13} Both parties filed post-hearing briefs outlining their positions.

{¶14} On January 23, 2013, the BTA issued a decision and order, in which it determined that there was "insufficient evidence to support appellants' claim of value," and there was no specific information regarding the effect of the wetlands on the property value. It found that although the Army Corps of Engineers' cease and desist order would "likely affect the value of the property * * * the evidence provided does not allow this board to make a determination as to what that effect is" on the parcels at issue. It found that while appellants attached a "general location map," nowhere in the record could they find a delineation of which areas were affected by the cease and desist order. The BTA also noted it found no support in the record to justify departing from previous decisions "rejecting claims that real property is worthless or has zero value." As appellants failed to meet their burden of proof, the BTA affirmed the decisions of the BOR, upholding the values previously determined by the Lake County Auditor.

{¶15} Appellants timely appeal and raise the following assignment of error:

> The Board of Tax Appeals erred in failing to hold that the taxable value of real property which the federal government has determined to be federally protected wetlands, and which is subject to a cease and desist order from the Army Corp. of Engineers prohibiting any and all use of the property is zero, or, alternatively, that the value is minimal as vacant undeveloped agricultural land and setting the value of Appellants' Property as such.

{¶16} The BTA "'is responsible for determining factual issues and, if the record contains reliable and probative support for these BTA determinations,'" we will affirm. *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, ¶14, quoting *Am. Natl. Can Co. v. Tracy*, 72 Ohio St.3d 150, 152 (1995). Conversely, we "'will not hesitate to reverse a

BTA decision that is based on an incorrect legal conclusion.'" *Id.*, quoting *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino*, 93 Ohio St.3d 231, 232 (2001). "[T]he [BTA] has wide discretion in determining the weight to be given the evidence and the credibility of witnesses that come before it." (Citations omitted.) *Kister v. Ashtabula Cty. Bd. of Revision*, 11th Dist. Ashtabula No. 2007-A-0050, 2007-Ohio-6943, ¶12.

**{¶17}** The BTA's decision in a valuation case such as the present matter will be reversed "only when it affirmatively appears from the record that such decision is unreasonable or unlawful." *Throckmorton v. Hamilton Cty. Bd. of Revision*, 75 Ohio St.3d 227, 229 (1996). "The fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities." *DAK, PLL v. Franklin Cty. Bd. of Revision*, 105 Ohio St.3d 84, 2005-Ohio-573, ¶14.

**{¶18}** Appellants argue that the BTA erred in failing to find that their property had either zero value or a minimal value and that they introduced sufficient evidence to support this valuation. Further, they assert this court should adopt, "as a legal standard, that wetlands in Ohio, especially those subject to a cease and desist Order from a Federal Agency, possess no value or have a minimal value as agricultural lands."

**{¶19}** The Mentor Exempted Village School District Board of Education argues that appellants failed to meet their burden to prove that the value of the property was zero, that the testimony of Calabrese, as a member of the property's ownership, holds an inherent bias, and that the evidence of value is not supported by additional, independent evidence.

6

{¶20} The Willoughby-Eastlake City School District Board of Education asserts that, although there was evidence that wetlands existed on appellants' property, no evidence of the value of the property was presented. It also contends this court cannot conclude that wetlands are always valueless, because property containing wetlands can be properly valued using appropriate appraisal methodologies.

{¶21} The BTA concluded it was not clear that all of the property was deemed federal wetlands and, therefore, affected by the cease and desist order. This conclusion is supported by the record. The letter noted the area of concern was "250 acres of property associated with the Riverside Commons development." However, the cease and desist order applied to "activities within Waters of the United States." It is clear the entire 250 acres is not "within the Waters of the United States." It is not clear how much of the acreage fits this definition. Furthermore, appellees presented evidence before the BTA of a mortgage placed on the property in March 2010 securing notes totaling 6.5 million dollars.[2] The placing of the mortgage on the property and issuance of the corresponding loan, made well after the implementation of the cease and desist order, suggests that the property does in fact have some value.

{¶22} Appellants concede that if the cease and desist order was removed or modified, the value of the property could be restored, at least to some extent. Nevertheless, appellants maintain that the final determination of the property's wetland status has no bearing on the value of the property in the present matter. However, even if the value of the wetlands was permanent, it has been previously recognized that wetlands do have some value in the marketplace. *Streetsboro City School Dist. Bd. of*

---

2. All of the notes under the original mortgage appear to have been made in 2006, approximately two years after the cease and desist letter was issued.

7

*Edn. v. Portage Cty. Bd. of Revision*, BTA No. 2005-T-705, 2008 Ohio Tax LEXIS 309, *7 (Feb. 22, 2008); *see also Girman v. Medina Cty. Bd. of Revision*, BTA No. 2009-A-480, 2011 Ohio Tax LEXIS 2291, *5 (Nov. 15, 2011) (noting longstanding precedent that property has value greater than zero). Appellants attempted to distinguish this precedent by suggesting the property involved in prior cases remained usable, but that in this case they are prohibited from selling the property even to conservation groups. However, the BTA noted there was nothing in the cease and desist letter prohibiting a sale.

**{¶23}** It was neither unreasonable nor unlawful for the BTA to conclude that appellants failed to meet their burden of proving that the value of the property was zero. However, in this case, that does not end the inquiry. The BTA acknowledged the cease and desist order had an impact on the value of the property: "We agree that the restrictions imposed on the use of the subject property by the Army Corps of Engineers' cease and desist order likely affect the value of the property." Although the BTA upheld the auditor's valuation, it is not clear the auditor's valuation took into account the restrictions recognized by the BTA as affecting the value. The question is whether it was proper for the BTA to uphold the auditor's valuation when sufficient evidence was presented to suggest it did not reflect the "true value" of the property.

**{¶24}** Recently, the Ohio Supreme Court addressed this question in *Dublin City School Bd. of Educ. v. Franklin Cty. Bd. of Revision*, __ Ohio St.3d __, 2013-Ohio-4543, *on reconsideration*, __ Ohio St.3d __, 2014-Ohio-1940. In that case, the Board of Revision adopted a valuation method proposed by the property owner. The Board of Education appealed to the BTA. The property owner's valuation method was rejected,

8

and the BTA ordered reinstatement of the auditor's valuation. However, the Court stated that reversion to the auditor's value in that case was not proper. "It is clear from a review of the record that the auditor's valuation of the property was too high. Specifically, there is no evidence indicating that the auditor accounted for the unfinished state of the units or the units' depreciation in value due to market conditions * * *." *Id.* at ¶21.

{¶25} The same logic applies to these unique parcels. Here, the cease and desist order has a clear impact on the value of the property. Neither of the valuations presented by the boards of education include an assessment of the restrictions imposed by the order. There is also no indication that the auditor took the cease and desist order into account or even knew of its existence. As the Court noted in *Dublin*, the legal directive to the auditor is to arrive at the "true value in money" of the property in question. *Id.* at ¶32, citing R.C. 5713.01(B).

{¶26} Generally, the BZA is justified in retaining the auditor's valuation where the property owner has not met its burden in support of its claimed value. However, "an exception to this general rule arises when the record affirmatively negates the validity of the county's valuation." *Dublin* at ¶20. While we do not agree the value is zero, there is certainly evidence to suggest the property is not useable at this time and, accordingly, the value is significantly impacted.

{¶27} Therefore, this matter is remanded to the BZA for the purpose of determining the true value of the parcels in question. If necessary, the BZA may order the presentation of additional evidence to assist in its determination. *See* R.C. 5317.01.

{¶28} The decision of the Ohio Board of Tax Appeals is reversed. We remand for further proceedings consistent with this opinion.


CYNTHIA WESTCOTT RICE, J., concurs,

DIANE V. GRENDELL, J., concurs in judgment only in part and dissents in part, with a Dissenting Opinion.


————————————————


DIANE V. GRENDELL, J., concurs in judgment only in part and dissents in part, with a Dissenting Opinion.

{¶29} I concur in judgment only as to the majority's decision to reverse the Ohio Board of Tax Appeals' determination regarding the valuation of the appellants' property. While the majority concludes that the BTA, upon remand, should reconsider its prior valuation and decide "the true value of the parcels in question," such a remand is unwarranted and unnecessary. Since it is undisputed that wetlands exist on appellants' property and the property is subject to a cease and desist order from the Army Corps of Engineers, the property lacks value *as a matter of law*.

{¶30} In reaching this conclusion, it must be emphasized that the property's lack of value arises primarily because it was subject to a cease and desist order since 2004, detailed in a letter from the Army Corps of Engineers, which prevented "*all activities* within the Waters of the United States." The letter described the "area of concern" as including approximately 250 acres of property. Calabrese, the representative/agent of the appellants who was familiar with the property and the ongoing wetlands dispute, testified on multiple occasions that the cease and desist letter essentially barred any

and all actions by appellants, including construction, development, and the sale of the property, and that they were "handcuffed." The fact that appellants halted construction and all other activities on a potentially lucrative development project based on this order evidences its seriousness and supports the appellants' contention that the property cannot be utilized. Given this evidence that activity must cease on the property, the appellants established a case that it had absolutely no value to them and was rendered worthless.

{¶31} Under the majority's holding, the BTA is in the position to potentially determine that the property has significant value. To allow the BTA to order the appellants to continue paying a potentially large sum of taxes on a property which they are prohibited from using in any manner is an unjust and inappropriate result, and is un-American.

{¶32} The majority asserts that it is not clear that the entire 250 acres are "within the Waters of the United States." *Supra* at ¶ 22. As explained above, the letter specifically stated its "area of concern": "approximately 250 acres," which would amount to all of the property at issue for tax purposes. The letter also notes that "*the entire site*" would be posted with cease and desist signs. The letter does not state that only part of the area is a concern, such that questions would arise regarding the value of the remaining portions. The critical issue is not only whether the entire 250 acres were covered by wetlands, but that the appellants were ordered to stop activity on all 250 acres, a conclusion which is supported by the evidence and testimony.

{¶33} The existence of this cease and desist order also distinguishes this case from *Streetsboro*, *supra*, cited by the majority, since the issue is not solely the existence

11

of a wetland condition but also the appellants' inability to use the property under the cease and desist order. In the present matter, the order itself renders the property valueless to appellants.

{¶34} The conclusion that the property could not be utilized by appellants, and, therefore, cannot be found to have value, is also supported by federal law. "Property rights in wetlands are * * * limited by federal statute." *Parkview Corp. v. Dept. of Army, Corps of Engineers*, 490 F.Supp. 1278, 1284 (E.D.Wis.1980). When interference with a wetland occurs, such as the construction and development in the present case, which results in the addition of fill or other materials to the wetland area, the Army Corps of Engineers is permitted to issue "a cease and desist order prohibiting *any further work*." (Emphasis added.) *United States v. Osborne*, N.D.Ohio No. 1:11CV1029, 2013 U.S. Dist. LEXIS 43423, 7 (Mar. 27, 2013), citing 33 C.F.R. 326.3(c)(1). Failure to cease work on the property can result in penalties to the owner. *Natl. Assn. of Home Builders v. United States EPA*, 731 F.Supp.2d 50, 52 (D.C.2010). Although the Army Corps of Engineers may subsequently issue a permit for work on a wetland, it is not always required to do so. *See Stoeco Dev., Ltd. v. Dept. of Army Corps of Engineers*, 701 F.Supp. 1075, 1080 (N.J.1988). If a landowner is prohibited from performing development or other work on a property and is unable to subsequently obtain a permit, this can render the property "all but worthless." *Formanek v. United States*, 26 Cl.Ct. 332, 340 (1992).

{¶35} Under this law, a landowner can be ordered to stop essentially all beneficial or profitable use of a property, or be subject to penalties, until and unless a permit can be obtained. As one court has noted, when a property cannot be developed

12

in its present condition, approval for construction cannot be obtained or is unlikely at the time, and there is no way to determine when the permit process may be completed, such factors must be taken into consideration when calculating the property value for the purposes of the tax valuation. *Gilmour Properties v. Bd. of Assessment Appeals*, 873 A.2d 64, 71 (Pa.Commw.2005).

{¶36} The majority notes that appellants conceded that the value of the property could be restored if the order was removed or modified. *Supra* at ¶ 23. As explained extensively above, the property had no value during the tax years at issue. Appellants have attempted to have the order lifted since it was issued in 2004, with no success. Allowing appellants to continue paying a property tax on a valueless property simply because it may have value in the future is entirely unfair to appellants and should not provide the basis for a determination in favor of appellees. *See Olmsted Falls Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 122 Ohio St.3d 134, 2009-Ohio-2461, 909 N.E.2d 597, ¶ 20 ("[a]s a matter of both case law and elementary principles, each tax year should be determined based on the evidence presented to the assessor that pertains to that year").

{¶37} The majority also asserts that the existence of a mortgage placed on the property supports a conclusion that the property does have value. No explanation is provided regarding how this reflects its value or whether the existence of the cease and desist order and the wetlands were taken into account at the time of the mortgage. A mortgage on a valueless parcel of real property does not make the property more valuable; rather, it simply makes the mortgage worthless.

{¶38} In sum, although the majority of this court clairvoyantly appears to believe that appellants' property must have some value, a logical use for the property which would provide such value is not advanced. A property that cannot be used in any manner at the time is of no value to an owner. To hold otherwise in this matter results in a deprivation of appellants' rights and is simply unjust. Thus, there is no basis to remand to the BTA for the determination of a new value, since it has already rejected the appellants' contention and evidence that the property lacks value.

{¶39} For the foregoing reasons, I concur in judgment only as to the reversal of the BTA's valuation and dissent from the conclusion that a remand is necessary in this case. I would reverse solely on the ground that the properly is valueless as a matter of law.