LANCASTER COLONY CORPORATION ET AL.,
APPELLANTS, *v.* LINDLEY, TAX COMMR., APPELLEE.

[Cite as Lancaster Colony v. Lindley (1980),
61 Ohio St. 2d 268.]

(No. 79-689 — Decided February 20, 1980.)

*Mr. Carlton S. Dargusch, Mr. Edward J. Bernert* and *Mr. James M. Buckley,* for appellants.

*Mr. William J. Brown,* attorney general, and *Mr. John C. Duffy, Jr.,* for appellee.

*Per Curiam.* Appellants assert that, since the Tax Commissioner recognized an overpayment of the April 30, 1975, assessment for the 1972 report year, the commissioner has a mandatory duty to refund the entire overpayment of the franchise tax for the 1972 report year, pursuant to R.C. 5733.11, regardless of the date of payment. In essence, appellants contend that the $94,852.16 overpayment made in 1972 should be refunded because of the $9,349.57 assessment in 1975, even though the application for review and correction as to that amount was filed February 6, 1976.

The Tax Commissioner is authorized to refund corporate franchise taxes in two instances. He may order a refund of taxes in a final determination issued on an application for review and correction of a franchise tax assessment in accordance with R.C. 5733.11 and an application for refund of corporate franchise taxes filed in accordance with R.C. 5733.12.

R.C. 5733.11 provides, in pertinent part, that:

"If upon final determination of the application * * * so filed * * * so that the amount due from such corporation * * * is less than the amount of the taxes paid, there shall be issued to the corporation * * * a refund in the amount of such overpayment as provided by section 5733.12 of the Revised Code * * * ."

Appellants incorrectly assert that the Tax Commissioner has a mandatory duty to issue a refund of the entire overpayment, pursuant to R.C. 5733.11. Rather, the mandates as to the amount and procedure of a refund are determined pursuant to R.C. 5733.12.

R.C. 5733.12, in pertinent part, provides:

"The treasurer of state shall refund to the corporation the amount of taxes paid illegally or erroneously, or paid on any illegal or erroneous assessment * * * provided that in any event *such application for refund must be filed with the commissioner within three years from the date of the illegal or erroneous payment of the tax. * * * ."* (Emphasis added.)

Appellants contend that they are entitled to an entire refund for all overpayments for the 1972 report year, because they paid an assessment in 1975 and filed their application for refund within three years. Appellee contends that the three

years run separately from each remittance. Accordingly, since the 1972 remittances were made more than three years prior to the application for a refund, the application for the refund of $94,852.16 is not timely, whereas the application for the refund of the 1975 assessment of $9,349.57 is timely.

We find merit in appellee's contention.

R.C. 5733.12 does not address itself to when the entire tax liability is extinguished, but rather it concerns itself with the date of the "illegal or erroneous payment." Further, R.C. 5733.12 specifically makes reference to refunds sought due to illegal or erroneous payments, as well as to refunds on illegal or erroneous assessments. The statute makes a clear distinction as to assessments. In 1972, appellants remitted money to the state in excess of their actual franchise tax liability. Those 1972 payments were illegal and erroneous when made. So, too, the payment of the 1975 assessment was a separate and distinct remittance and also illegal and erroneous when made.

The statute requires that an application for a refund be made within three years of the illegal or erroneous payment. Thus, the payments made in 1972 can not be refunded, pursuant to an application filed in 1976.

In *Pelton* v. *Bemis* (1886), 44 Ohio St. 51, this court held, in the second paragraph of the syllabus, that:

"When, for the purpose of collection, an assessment is divided into two or more installments, payable annually or otherwise, the limitation of time in which the action can be brought, as provided in said section, begins to run against such installment from the time of its collection, and not from the collection of the last installment."

This court, finding the above rationale applicable to the instant cause, determines that the three-year limitation of R.C. 5733.12 begins to run anew against each illegal and erroneous payment.

Accordingly, the decision of the Board of Tax Appeals is affirmed.

*Decision affirmed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, P. BROWN, SWEENEY and LOCHER, JJ., concur.

HOLMES, J., dissenting.   I must dissent in that I disagree with the position of the Board of Tax Appeals, and the majority herein, that the period of time within which to apply for a refund pursuant to R.C. 5733.12 begins to run from the time of each illegal or erroneous payment upon the total tax which is assessed and redetermined by the Tax Commissioner.

It is my view that the three-year period within which an application for a refund of the tax may be filed begins to run from the date of the last payment upon the full tax which is finally determined by the Tax Commissioner for any given tax year.

Although R.C. 5733.12 does not specifically speak in terms of the last payment upon the total tax which is finally determined as triggering the running of the time, the words "payment of the tax" in that section reasonably mean the payment of the total tax as calculated by the Tax Commissioner.

A final determination by the Tax Commissioner constitutes the liability of the taxpayer for any given year, and the initial determination of the tax due, the assessment, any redetermination, the final determination of the tax due, and the payments thereon, should be treated as a single transaction for that particular tax year for the purpose of obtaining any refund or overpayment.

The law as pronounced in *Pelton* v. *Bemis* (1886), 44 Ohio St. 51, relied upon by the commissioner, and by the majority herein, is valid law, but is not applicable to the instant cause. The tax in *Pelton* was a special assessment upon real estate, such assessment to be collected in yearly installments. I would agree that the running of the statute of limitations for the purpose of bringing an action for refund under such circumstances would be from the time of the collection of each year's installment, the amount of which has been previously calculated for each of the assessment years to accomplish the total amount of the special assessment.

Here we are not dealing with a tax separated into portions of a whole, as would be installment payments upon a real estate assessment, but are dealing with a tax in which the assessment, initial payment, and final determination of the tax due are a unified transaction for any given tax year.

Any amount of unlawful or erroneous overpayment may not reasonably be known until the final determination of such tax is rendered by the Tax Commissioner.

I would reverse the order of the Board of Tax Appeals.