[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Renacci v. Testa,* Slip Opinion No. 2016-Ohio-3394.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-3394

RENACCI ET AL., APPELLANTS AND CROSS-APPELLEES, *v.* TESTA, TAX COMMR., APPELLEE AND CROSS-APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Renacci v. Testa,* Slip Opinion No. 2016-Ohio-3394.]

*Taxation—R.C. 5747.15—Taxpayers had reasonable cause to resist paying tax based on reasonable but mistaken interpretation of federal statutes—Tax commissioner abused his discretion in refusing to refund double-interest penalty.*

(No. 2014-1893—Submitted March 8, 2016—Decided June 15, 2016.)

APPEAL and CROSS-APPEAL from the Board of Tax Appeals, No. 2012-1850.

_____

PFEIFER, J.

{¶ 1} In this case, appellee and cross-appellant, the tax commissioner, first imposed, and then declined to remit, a double-interest income-tax penalty for delay of payment. The Board of Tax Appeals ("BTA") affirmed. The income at issue was tax year 2000 pass-through distributive-share income from a Subchapter S

corporation whose shares were held by an "electing small business trust" ("ESBT") under federal law. A Subchapter S corporation is often referred to as an "S corporation." "Subchapter S of the Internal Revenue Code (Section 1361 et seq., Title 26, U.S.Code) permits the owners of qualifying corporations to elect a special tax status under which the corporation and its shareholders receive conduit-type taxation that is comparable to partnership taxation." *Ardire v. Tracy*, 77 Ohio St.3d 409, 674 N.E.2d 1155 (1996), fn. 1. "For tax purposes, a Subchapter S corporation differs significantly from a normal corporation in that the profits generated through the S corporation are taxed as personal income to the shareholders. The taxable income of an S corporation is computed essentially as if the corporation were an individual." *Id.*

{¶ 2} The delay in payment resulted from a legal dispute concerning the taxability in Ohio of the income in question. Along with numerous other taxpayers and their advisors, appellants and cross-appellees, James B. and Tina D. Renacci, read the pertinent federal statutes as requiring the imposition of tax on the trust rather than on the individual shareholder. The tax department took the contrary position, which was ultimately vindicated through our decisions in *Knust v. Wilkins*, 111 Ohio St.3d 331, 2006-Ohio-5791, 856 N.E.2d 243; *Lovell v. Levin*, 116 Ohio St.3d 200, 2007-Ohio-6054, 877 N.E.2d 667; and *Brown v. Levin*, 119 Ohio St.3d 335, 2008-Ohio-4081, 894 N.E.2d 35.

{¶ 3} The Renaccis ultimately made payment to the state and are pursuing a refund of the double-interest penalty. The tax commissioner has discretion in his decision whether to impose or remit the penalty, and in making that decision, he considers whether the delay in payment was based on "reasonable cause" or "willful neglect." R.C. 5747.15(C). Although the statute vests broad discretion in the tax commissioner, we conclude that in this instance, he abused his discretion in denying the refund request. The tax commissioner appears to reject the Renaccis' assertion that they acted in good-faith reliance on a reasonable interpretation of the

law. The tax commissioner unaccountably exalts the pronouncements of his information releases, which have no force of law, as though they impose binding obligations that no taxpayer should dare to question.

{¶ 4} For these reasons, we find that the tax commissioner's decisions to impose and retain the double-interest penalty were arbitrary and unconscionable. We therefore reverse the decision of the BTA and remand the cause to the tax commissioner with instructions that the penalty be refunded, along with any interest paid that was associated with that penalty.

## BACKGROUND

{¶ 5} The issue in this case is whether the tax commissioner abused his discretion with regard to imposing a penalty. But that question is tied to an underlying dispute of substantive tax law that was resolved in two ways: a treasury regulation issued by the federal government, codified at 26 C.F.R. 1.641(c)-1(k), and decisions issued by this court in *Knust*, 111 Ohio St.3d 331, 2006-Ohio-5791, 856 N.E.2d 243, *Lovell*, 116 Ohio St.3d 200, 2007-Ohio-6054, 877 N.E.2d 667, and *Brown*, 119 Ohio St.3d 335, 2008-Ohio-4081, 894 N.E.2d 35. That dispute can be summarized with the question, Should S-corporation income be taxed to an ESBT that holds the S-corporation shares or to the grantor of the trust?

{¶ 6} For individuals, income tax in Ohio is imposed on Ohio adjusted gross income. R.C. 5747.02(A). That tax base is determined initially by reference to the taxpayer's federal adjusted gross income; certain adjustments that convert federal adjusted gross income into Ohio adjusted gross income are then prescribed by R.C. Chapter 5747. *See* R.C. 5747.01(A). Under this scheme of taxation, if an item of income were properly omitted from federal adjusted gross income, then it would not appear in Ohio adjusted gross income unless Ohio law required that the amount be added back in (an "add-back").

{¶ 7} In this case, the taxpayers read a provision of federal law, enacted in 1996, as requiring that the income be treated as income of the trust for income-tax

purposes. That provision is 26 U.S.C. 641(c), which provides that the "portion of any electing small business trust which consists of stock in 1 or more S corporations shall be treated as a separate trust," and that portion is then subjected to special taxation rules by the statute as a trust.

{¶ 8} The tax commissioner read other provisions of the Internal Revenue Code as superseding the requirement of separate-trust treatment when the trust at issue qualifies as a "grantor trust." A "grantor trust" is one in which the grantor has retained control of the trust assets, such as the right to revoke the trust, *see* 26 U.S.C. 676. The grantor of a grantor trust must report and be taxed on the trust income. 26 U.S.C. 671.

{¶ 9} Here, the tax commissioner argued that the "grantor-trust rule" of treating trust income as income of the individual grantor would apply despite the ESBT statutory language indicating the possibility that the portion of the trust holding S-corporation shares should be subject to special rules of taxation. The tax commissioner advanced his view in two information releases, one in 2000 and one in 2002.

{¶ 10} In 2002, the United States Treasury Department promulgated 26 C.F.R. 1.641(c)-1, which states that "[t]he grantor portion of an ESBT is the portion of the trust that is treated as owned by the grantor or another person under subpart E [26 U.S.C. 671 et seq.]," which includes the grantor-trust provision. 26 C.F.R. 1.641(c)-1(b)(1). The taxpayers' interpretation of the federal law is precluded by the definition of the "S portion" of the ESBT, which is taxed to the trust. The S portion of the trust must satisfy not just one but two conditions: it must consist of S-corporation stock and it must not be "treated as owned by the grantor or another person under subpart E" (including 26 U.S.C. 671). 26 C.F.R. 1.641(c)-1(b). Thus, taxation as a separate trust occurs only when that portion of the trust is not a grantor trust. The regulation specifically states that a "grantor * * * who is treated as the owner of a portion of the ESBT includes in computing taxable income items of

4

income, deductions, and credits against tax attributable to that portion of the ESBT under [26 U.S.C.] 671." 26 C.F.R. 1.641(c)-1(c).

{¶ 11} There is an important limitation on the effect of the treasury regulation: it applies "generally" to taxable years of ESBTs "beginning on or after May 14, 2002." 26 C.F.R. 1.641(c)-1(k). Certain parts of the regulation (those relevant here) are applicable only to "taxable years of ESBTs that end on and after December 29, 2000." *Id*. In this case, the Renaccis presented evidence that the taxable year of the ESBT ended before December 29, 2000, with the result that their situation is not controlled by the regulation.

*The tax commissioner's information releases*

{¶ 12} Beginning with information release IT 2000-01 (issued Jan. 19, 2000), available at http://www.tax.ohio.gov/ohio_individual/individual/information_releases/it200001.aspx, the Ohio Department of Taxation took the position that the ESBT election did not change the obligation of the grantor of a grantor trust to include the S-corporation income on his or her own individual income tax return. The release states:

> Effective for individual and estate taxable years beginning after December 31, 1999, the Income Tax Audit Division will require certain individuals and estates to include in their federal adjusted gross income ("FAGI") and Ohio taxable income all relevant pass-through items of income, gain or loss from S corporations when such items have been treated as reportable for federal income tax purposes on a trust's fiduciary income tax return (Form 1041) because the trust has elected to be taxed as an Electing Small Business Trust ("ESBT") under Internal Revenue Code ("IRC") section 1361(e)(3). Specifically, if an individual or estate would be treated as the owner of all or a portion of a trust pursuant

5

to [26 U.S.C.] 671 et seq., then such individual or estate shall include in his, her or its FAGI or Ohio taxable income all relevant S corporation pass-through items as if the individual or estate were itself the actual owner of the S corporation stock owned by the trust.

* * *

For taxable years beginning after December 31, 1999, assessments for unpaid tax and all related failure-to-timely-pay and failure-to-timely-file charges will apply (i) to such individuals and estates who do not adjust their FAGI and Ohio taxable income (and timely pay tax and related estimated tax thereon) in accordance with this information release and (ii) to S corporations which do not timely pay the 5% withholding tax and the related estimated tax with respect to such S corporation distributive shares.

(Footnote deleted.)

{¶ 13} The discussion section states:

The Internal Revenue Code does not contain any provisions which expressly state that an ESBT which also qualifies as and/or is described as a grantor trust is exempt from the grantor trust provisions. Neither does the "Blue Book" provide or address any such exemption. In fact, the principal advocate of the ESBT legislation has cautioned that the provisions of an ESBT's governing instruments "* * * should be limited so that no power would result in the inclusion of trust assets or revenue in the trustee's own estate or income." Thus, even the principal advocate of the ESBT legislation implicitly recognizes that an ESBT which also qualifies as and/or is described as a grantor trust is, in fact, subject to the

6

grantor trust provisions for taxation rather than qualifying for the special rules for taxation of ESBT's under IRC section 641(c).

The Income Tax Audit Division recognizes that various tax practitioners have differing interpretations of how the ESBT provisions interplay with the grantor trust provisions of the Internal Revenue Code. Some have advocated that the ESBT provisions should take precedence over the grantor trust provisions, while others believe that a grantor trust cannot make the ESBT election. In light of the fact that neither the U.S. Treasury Department nor the Internal Revenue Service has issued any guidance in this area, and barring any change in the federal tax law or issuance of new U.S. Treasury regulations to the contrary, the Income Tax Audit Division's position is that a grantor trust cannot make the ESBT election.

(Footnotes deleted.)

{¶ 14} In 2002, the tax department took an even more forceful position in PIT 2001-04 (issued July 3, 2002), available at http://www.tax.ohio.gov/ohio_individual/individual/information_releases/pit2002 04.aspx, stating:

The Ohio Department of Taxation has initiated an audit program to identify and assess individuals who are not "adding back" to their federal adjusted gross income ("FAGI") their distributive shares of S corporation profit which they receive via a trust qualifying as both an electing small business trust ("ESBT") and a grantor trust. This audit initiative is based upon the Department's January 19, 2000 information release directing

taxpayers to make the add-back to the extent taxpayers did not include such amounts in their FAGI. Effective for post-1999 taxable years, the information release provides detailed authority supporting the required add-back.

Using computer programs and IRS-supplied databases, the Department will identify Ohio taxpayers who have not fully complied with the requirements of that information release. Upon identification of these taxpayers, the Department will issue assessments for tax, interest (8% for 2000, 9% for 2001, and 7% for 2002), interest penalty (Ohio form IT-2210), and failure-to-pay penalty.

*The Renaccis' 2000 return*

{¶ 15} The Renaccis filed their joint Ohio tax return for taxable year 2000 without reporting and paying Ohio individual income tax on amounts earned by the "James B. Renacci Tr 1998." That trust owned shares of three S corporations, whose combined corporate earnings in 2000, as reported on form FT 1120 S, were over $14 million. Although the Renaccis did not report the income on their joint return as individual taxpayers, they filed disclosures that showed that the S corporations were owned by the James B. Renacci trust.

{¶ 16} In 2003, the tax commissioner audited and assessed the Renaccis in relation to the unreported S-corporation income. The tax commissioner computed the tax owed by "adding back" $13,899,960 of S-corporation income to the Renaccis' federal adjusted gross income. By the tax commissioner's corrected computation, the Ohio taxable-income figure was $13,730,440.

{¶ 17} The Renaccis filed a petition for reassessment, which was denied. BTA No. 2006-Z-780, 2007 WL 1515135 (May 18, 2007). The Renaccis appealed

8

to the Ninth District Court of Appeals. Subsequently, they dismissed that appeal, made payment, and pursued a refund of the double-interest penalty.

*From reassessment petition to refund claim*

{¶ 18} In 2007, the Renaccis ceased contesting their tax liability based on *Knust*, 111 Ohio St.3d 331, 2006-Ohio-5791, 856 N.E.2d 243, and *Lovell*, 116 Ohio St.3d 200, 2007-Ohio-6054, 877 N.E.2d 667. They also sought a settlement agreement with the tax commissioner, who transmitted an offer involving a reduction of penalty if the taxpayer could pay in full within two weeks. The deal fell apart when the Renaccis sought to pay on a longer schedule. The Renaccis then shifted procedural gears by paying all amounts demanded by the state and pursuing a refund claim for the penalty amount. (The details of the settlement discussions form one of the grounds for the Renaccis' claim that the commissioner abused his discretion. Because we resolve this case in the Renaccis' favor on other grounds, we need not delve into the full details here.)

{¶ 19} In e-mail correspondence, the Renaccis sought assurance that they could pursue the penalty remission through a refund claim. A tax-department official expressed her belief that if a refund claim were filed, the tax commissioner would issue a final determination that could be appealed to the BTA and thereafter to the courts if the penalty was not abated.

{¶ 20} The Renaccis tendered payments of $140,000 on April 27, 2007; $814,650 on August 29, 2007; $425,400 on December 20, 2007; and $359,822 on July 15, 2008. The Renaccis dismissed their appeal from the BTA decision addressing the reassessment petition and, on June 23, 2009, filed their refund claim, seeking $359,822, the amount of penalty paid plus post-assessment interest. The tax commissioner denied the refund claim on the sole ground that the Renaccis "willfully filed their return contrary to a clear Department position." The Renaccis appealed to the BTA.

*Proceedings before the BTA*

{¶ 21} Before the BTA hearing, the Renaccis attempted to depose former and current tax-department personnel. Although their discovery efforts were not entirely successful, they did subpoena former tax commissioner Thomas Zaino and former income-tax counsel for the tax department Jeffrey Sherman to testify at the BTA hearing.

{¶ 22} The hearing on March 3, 2014, was contentious, primarily because the tax commissioner's counsel insisted that evidence regarding statements of department personnel was barred on the grounds that it was irrelevant or was protected by the deliberative-process privilege. The BTA examiner at certain points sustained the commissioner's relevancy objection, and the Renaccis were hindered in the presentation of their argument that they had acted in good faith. But the Renaccis managed to adduce some evidence in support of their claim that they had had reasonable cause to resist paying the tax. The record establishes the following:

- Former income-tax counsel for the tax department Jeffrey Sherman confirmed that he had stated at tax conferences that the tax department—prior to the January 2000 information release—was not taxing S-corporation pass-through income from grantor trusts that had made the ESBT election.

- Former tax commissioner and tax-law practitioner Thomas Zaino confirmed that the ESBT election created a possible tax strategy for S-corporation shareholders to minimize Ohio individual income tax. Zaino also confirmed his understanding that after he became tax commissioner in 1999, the January 2000 information release reflected a policy "that on a go-forward basis folks had to come forward and treat the grantor trusts that chose to make an ESBT election as a grantor trust."

- The tax department's deputy tax commissioner was quoted by Columbus *Business First* in 1998 as stating that there was "an opportunity * * * to use this mechanism [an ESBT election for a grantor trust] to avoid taxation."

- The General Assembly considered legislation in 1998 that would ensure that tax would be imposed on the S-corporation pass-through income as a matter of state law, regardless of the proper treatment under federal law.

{¶ 23} The tax commissioner offered the following evidence:

- An affidavit by Margaret Brewer, a tax-department employee, indicating that the Renaccis were treated the same as similar claimants who failed to comply with the 2000 information release or to settle their cases.

- The two information releases quoted above.

- The testimony of an auditor to show that the tax department was auditing the "grantor trust/ESBT device" even before the January 2000 information release. On cross-examination, however, it was revealed that the auditor knew of only a single instance of an audit applying the tax commissioner's theory to a year prior to 2000 and that the audit occurred after 2000.

*The BTA decision*

{¶ 24} The BTA rejected the tax commissioner's argument that the BTA lacked jurisdiction under R.C. 5703.60(A)(3). R.C. 5703.60 addresses the procedure to be followed by the tax commissioner when a taxpayer files a petition for reassessment. And R.C. 5703.60(A)(3) "clearly contemplates that the filing and final adjudication of a petition for reassessment can be followed by the filing of an application for refund, subject to one caveat—that objections decided on the merits

on appeal of the petition for reassessment may not be relitigated through an application for refund." BTA No. 2012-1850, 2014 WL 5093565 *3 (Oct. 1, 2014).

{¶ 25} Turning to the merits, the BTA noted that the final determination states that the Renaccis " 'willfully filed their return contrary to a clear Department position.' " *Id.* at *4. Because the tax commissioner "provided clear direction as to his change in policy regarding the taxation of income to grantors of ESBT trusts, [the Renaccis'] failure to follow the commissioner's clear instructions was reasonably found by the commissioner to be willful neglect, and not action in good faith." *Id*. at *5. Thus, the BTA held, reliance on the absence of an IRS regulation and the dissent in *Knust* did not suffice to establish good faith. The BTA affirmed the denial of penalty remission, and the Renaccis appealed to this court. The tax commissioner then filed a cross-appeal.

## ANALYSIS

*The Renaccis had the right to seek a refund of penalty under*
*the former version of R.C. 5747.11*

{¶ 26} As a protective cross-appeal, the tax commissioner asserts that he and the BTA lacked jurisdiction to grant the relief from penalty sought by the Renaccis in these proceedings. At the time the present refund claim was initiated, R.C. 5747.11(A) provided that the tax commissioner "shall refund to * * * taxpayers * * * (3) Amounts in excess of one dollar paid on an illegal, erroneous, or excessive assessment." Am.Sub.H.B. No. 530, 151 Ohio Laws, Part IV, 6699. In 2013, R.C. 5747.11(A) was amended to require that the tax commissioner "refund to * * * taxpayers * * * the amount of any overpayment of such tax." 2013 Am.Sub.H.B. No. 59. Under the amended version of the statute, the tax commissioner has a strong argument for limiting the refund claim to the amount of overpayment of tax. But the version in effect when the refund claim was filed expressly authorizes a claim for refund of any payment on an "excessive" assessment.

**{¶ 27}** We see no reason to conclude that the language of the former version does not authorize a penalty-only refund claim when, as in this case, the taxpayer submits that the assessment of the penalty is excessive. Indeed, "excessive" is an additional category that does not require that the amount assessed be illegal or erroneous. The former statute thereby opens the door to a claim challenging the penalty without challenging the tax. Because the wording of the statute appears to broaden the scope of the relief available, we are bound to extend the statute's operation to its full breadth. *See Phoenix Amusement Co. v. Glander*, 148 Ohio St. 592, 76 N.E.2d 605 (1947), paragraph one of the syllabus ("Statutory provisions for the refund of taxes illegally or erroneously paid or paid on an illegal or erroneous assessment should be liberally construed in favor of the taxpayer").

**{¶ 28}** The tax commissioner cites two decisions of this court that involve the corporate franchise tax rather than the individual income tax. Neither case addresses a claim of refund brought after full payment; instead, they both involve a challenge to a deficiency assessment. *See Internatl. Business Machines Corp. v. Zaino*, 94 Ohio St.3d 152, 761 N.E.2d 20 (2002); *Lancaster Colony Corp. v Lindley*, 61 Ohio St.2d 268, 400 N.E.2d 905 (1980). *Internatl. Business Machines* states, "When the tax commissioner has made an assessment under R.C. 5733.11, the amount that may be contested and refunded under that statute is limited to the amount paid on the deficiency assessment." *Id.* at syllabus.

**{¶ 29}** The tax commissioner also cites sales-tax cases that were decided by the Board of Tax Appeals. *Stevens v. Tracy*, BTA No. 94-H-1166, 1995 Ohio Tax LEXIS 1265 (Oct. 20, 1995); *Tenbrink v. Tracy*, BTA No. 95-R-181, 1995 Ohio Tax LEXIS 1487 (Dec. 8, 1995); and *Clarkson v. Tracy*, BTA No. 97-S-135, 1997 Ohio Tax LEXIS 1152 (Aug. 29, 1997). These cases provide no more guidance than the franchise-tax cases cited above. Each of these decisions involves sales-tax assessments during the 1990s against vendors who apparently failed to collect and remit sales taxes to the state. The vendors apparently paid the full assessments,

then sought refunds of the penalty amounts. Those decisions have no bearing on this case because the sales-tax statutes of that time explicitly created separate procedures for tax refunds and penalty remissions and the vendors had followed the wrong procedures. *See Clarkson* at 6.

*Determining whether a taxpayer had reasonable cause to resist paying*
*a tax requires considering whether the taxpayer acted in good-faith*
*reliance on a reasonable interpretation of the law*

{¶ 30} The Renaccis' first assignment of error is dispositive of this appeal in their favor, so we will not address their other four arguments. The Renaccis argue that the tax commissioner abused his discretion under R.C. 5747.15 by basing his finding of willful neglect solely on their failure to comply with the precise instructions of an information release.

{¶ 31} R.C. 5747.15(A)(2) provides that "a penalty may be imposed not exceeding twice the applicable interest charged * * * for the delinquent payment." R.C. 5747.15(C) authorizes the tax commissioner to abate a penalty imposed under R.C. 5747.15 "if the taxpayer * * * shows that the failure to comply with the provisions of [the income-tax law] is due to reasonable cause and not willful neglect." The statute prescribes a standard for abating the penalty and entrusts the determination whether to impose or to abate the penalty to the tax commissioner's ultimate discretion. The latter point is expressed by the statute's use of the word "may," which we have held in similar contexts to constitute a grant of discretionary authority. *J.M. Smucker, L.L.C. v. Levin*, 113 Ohio St.3d 337, 2007-Ohio-2073, 865 N.E.2d 866, ¶ 14-15.

{¶ 32} The discretionary nature of the tax commissioner's determination means that both the BTA and this court must review the denial of remission here to determine whether the tax commissioner abused his discretion, not whether we would have reached a different conclusion. *Id.* at ¶ 16 ("Because the Tax Commissioner has discretion to grant or deny an abatement of a late-filing penalty,

the BTA and the court must apply an abuse-of-discretion standard"). Abuse of discretion connotes an unreasonable, arbitrary, or unconscionable attitude. *Id.*

*The BTA erred by failing to acknowledge the taxpayers'*

*reasonable-cause argument*

{¶ 33} The tax commissioner's final determination recites only one reason to support the finding of willful neglect, that "[t]he claimants willfully filed their [2000] return contrary to a clear Department position." The claimants "failed to act in good faith," according to the commissioner's determination, because they were "made aware of the Department's change in policy" through the 2000 information release and then failed to act in accordance with its terms.

{¶ 34} In upholding this determination, the BTA stated that the Renaccis' challenge relied only on "the *absence* of IRS regulation on the issue" of their tax obligation and on the dissenting opinion in *Knust*. (Emphasis sic.) 2014 WL 5093565, *5. That is a gross misstatement. The Renaccis have consistently stated throughout these proceedings that they were relying on the interpretation of the federal statute that the tax commissioner had abandoned, i.e., the interpretation that the trust rather than the grantor was to report and pay tax on the distributive-share income. That the tax commissioner changed his view of the federal statute does not make the earlier reading unreasonable.

{¶ 35} By failing to acknowledge that federal law constituted an element of the Renaccis' reasonable-cause argument, the BTA acted unreasonably and unlawfully in its review of the commissioner's determination. That failure blinded the BTA to the arbitrary nature of a determination that sustains a penalty without consideration of any factor other than that the taxpayer did not abide by the tax department's information release.

*Equating a taxpayer's good-faith insistence on its legal rights with willful neglect shows an arbitrary and unconscionable attitude*

**{¶ 36}** The tax commissioner's insistence that any departure from his published instructions negates the taxpayer's good faith is arbitrary. The reasonableness of the taxpayer's interpretation of the federal statute is relevant to the determination whether the taxpayer had reasonable cause to resist the tax commissioner's interpretation. Neither the commissioner nor the BTA even considered whether the statute could fairly be read in favor of the Renaccis' position. Instead, the tax commissioner's information releases were deemed to be fully dispositive. Moreover, it does not make sense to regard the mere publication by the tax commissioner of his interpretation of federal law as establishing that the taxpayer's contrary view is unreasonable.

**{¶ 37}** An information release does not create legal obligations by its own force—a fact that both the commissioner and the BTA ignore when they measure the Renaccis' good faith solely in terms of their willingness to abide by demands set forth in the tax department's pronouncements. We have repeatedly held that when the tax commissioner seeks to exercise administrative authority in a systematic way over a broad range of taxpayer claims, he must promulgate his pronouncement as an administrative rule. *See Progressive Plastics, Inc. v. Testa*, 133 Ohio St.3d 490, 2012-Ohio-4759, 979 N.E.2d 280, ¶ 31 (tax commissioner " 'cannot confer the force of law on a requirement without promulgating it as a rule' "), quoting *HealthSouth Corp. v. Testa*, 132 Ohio St.3d 55, 2012-Ohio-1871, 969 N.E.2d 232, ¶ 33, citing *McLean Trucking Co. v. Lindley*, 70 Ohio St.2d 106, 114-116, 435 N.E.2d 414 (1982), and *Condee v. Lindley*, 12 Ohio St.3d 90, 92-92, 465 N.E.2d 450 (1984). The ambivalence of the IRS with respect to periods not covered by the treasury regulation, coupled with the absence of Ohio statutory authority for an add-back of the distributive share, militates strongly in favor of requiring the tax commissioner to proceed by rulemaking in this context.

**{¶ 38}** The tax commissioner also insists that the penalty is justified because the Renaccis presented an unusually intransigent case of taxpayer resistance to his demands. At oral argument, counsel for the tax commissioner stated that "everybody else," or "virtually everybody," paid up front. Even allowing some latitude for exaggeration, we find no support for this assertion. We have issued no fewer than three decisions that addressed the ESBT issue: *Knust*, 111 Ohio St.3d 331, 2006-Ohio-5791, 856 N.E.2d 243; *Lovell*, 116 Ohio St.3d 200, 2007-Ohio-6054, 877 N.E.2d 667; and *Brown*, 119 Ohio St.3d 335, 2008-Ohio-4081, 894 N.E.2d 35. Those three appeals presented a total of seven taxpayer claims; of those, three sought refunds because the taxpayers had paid up front and four involved taxpayers who had not paid up front. We conclude that the range of taxpayer responses was much more divided than the tax commissioner acknowledged.

**{¶ 39}** We hold that the BTA unreasonably and unlawfully permitted the tax commissioner to predicate the reasonable-cause determination exclusively on compliance with the tax department's information releases that had no force of law. We therefore reverse the BTA's conclusion that the tax commissioner acted within his discretionary authority in denying the claim for refund of the double-interest penalty.

*The Renaccis had reasonable cause to resist paying until our*

*2007 decision in* Lovell v. Levin

**{¶ 40}** The tax commissioner also contends that even if the Renaccis had reasonable cause to resist paying the tax when it was first assessed, reasonable cause evaporated with the announcement of *Knust*, 111 Ohio St.3d 331, 2006-Ohio-5791, 856 N.E.2d 243, on November 22, 2006. This argument places emphasis on the delay of payment between that date and the Renaccis' tender of payment in four increments: $140,000 on April 27, 2007; $814,650 on August 29, 2007; $425,400 on December 20, 2007, and $359,822 on July 15, 2008. We find that the Renaccis

had reasonable cause to resist paying the assessment until the announcement of *Lovell*, 116 Ohio St.3d 200, 2007-Ohio-6054, 877 N.E.2d 667, on November 20, 2007, because the Renaccis argued that their situation was not controlled by the treasury regulation, as the claim in *Knust* was. Only in *Lovell* did we address and dispose of the claims of taxpayers who, like the Renaccis, claimed to be immune because the federal regulation did not apply. *Compare Knust*, ¶ 30, *with Lovell*, ¶ 28.

{¶ 41} To be sure, *Lovell* placed little significance on the federal regulation, citing *Knust* for the proposition that the regulation merely "amplifies" the statutory basis for ruling in favor of the state's position. *Lovell*, ¶ 28. But that ruling in *Lovell* itself does not affect the claim of reasonable cause, because the claimants in *Lovell* had a substantial argument that their cases should be treated differently than those of the claimants in *Knust*.

{¶ 42} As explained earlier in this opinion, federal adjusted gross income constitutes the starting point for determining Ohio adjusted gross income. Arguably, if federal authorities treated the income as properly reportable by and taxable to the trust instead of the grantor, the tax commissioner had no basis in Ohio law for ordering an "add-back" for Ohio income-tax purposes. This was an argument raised in *Lovell*. In this case, the tax commissioner has never contested the Renaccis' assertion that their situation is not subject to the treasury regulation. Accordingly, we conclude that the Renaccis could reasonably have awaited the outcome of *Lovell* for potential relief from the tax assessment against them. Because *Lovell* was not decided until November 2007, when the Renaccis were already in the process of paying their assessment, we hold that their claim of reasonable cause extended into the time frame in which they were making payment.

*The taxpayers' interpretation of the federal statutes was*
*reasonable even though mistaken*

**{¶ 43}** The component of our analysis that is not yet explicit is the reasonableness of the Renaccis' interpretation of the federal statutes. As our previous discussion indicates, we regard that interpretation as reasonable, even though it proved to be mistaken. In 1996, the ESBT provision was added to the Internal Revenue Code. Pub. L. No. 104-188, 110 Stat. 1755. Its terms prescribe how the S-corporation portion of an ESBT is to be taxed as a trust. Namely, 26 U.S.C. 641(c) provides that the "portion of any electing small business trust which consists of stock in 1 or more S corporations shall be treated as a separate trust," and that portion is then subjected to special taxation rules by the statute as a trust. An initial reading could reasonably construe an intent to make a specific dispensation with respect to ESBTs under subpart A (26 U.S.C. 641 et seq.) that would exempt them from the operation of the grantor-trust rule in subpart E (26 U.S.C. 671 et seq.). In *Knust*, we held the contrary, construing the ESBT language as meaning that "when an income tax is imposed on a trust, that tax is to be calculated in a specified way." *Id.*, ¶ 25.

**{¶ 44}** The taxpayers' alternative reading is not unreasonable. We predicate our determination of reasonableness on our own reading of the federal statutes plus the inferences that we draw from the tax commissioner's information releases when read in conjunction with our decisions in *Knust*, *Lovell*, and *Brown.*

**CONCLUSION**

**{¶ 45}** For the foregoing reasons, we reverse the decision of the BTA and remand the cause to the tax commissioner with instructions that the double-interest penalty be refunded, along with any interest paid that was associated with that penalty.

Decision reversed
and cause remanded.

O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

O'CONNOR, C.J., concurs in judgment only.

_____

Buckingham, Doolittle & Burroughs, L.L.C., Steven A. Dimengo, and Matthew R. Duncan, for appellants and cross-appellees.

Michael DeWine, Attorney General, and Barton A. Hubbard, Assistant Attorney General, for appellee and cross-appellant.

_____