O’Connor, C.J.,
dissenting.
{¶ 20} I disagree with the legal premises on which the majority opinion is based. A county board of elections and a county auditor are not required to submit a copy of Ohio Secretary of State Form 5-U to the Ohio Tax Commissioner. Ohio Secretary of State Form 125 is a designated form for reporting the results of tax levies to the tax commissioner. Having received an executed Form 125 for the levy at issue, the tax commissioner, respondent Joseph Testa, had no statutory authority to demand a Form 5-U or otherwise conduct an investigation into election proceedings. Rather, pursuant to R.C. 319.301(D), the tax commissioner has a clear legal duty to conduct the ministerial functions of his office, and *640 because he has refused to do so, a writ of mandamus should issue. I therefore respectfully dissent.
{¶ 21} In July 2015, relator, the Delaware Joint Vocational School District Board of Education, approved a resolution to proceed with a renewal of its ten-year, 1.7-mill operating levy. Pursuant to R.C. 3311.21(A), the school board certified its renewal levy to the board of elections in Delaware County, the county in which approximately 98.4 percent of the tax; parcels in the Delaware Joint Vocational School District are located. Through no fault of the school board, the Delaware County Board of Elections neglected to give notice of the resolution to the boards of elections in Franklin, Marion, Morrow, and Union Counties, the other four counties with territory in the district, as it was required to do by R.C. 3311.21(A).
{¶ 22} On November 20, 2015, the Delaware County Board of Elections certified the passage of the renewal levy, by a vote of 28,457 to 17,813. The four excluded counties contained only about 1,026 registered voters in the district. So the omission of those ballots did not affect the outcome: even if every excluded voter had cast a ballot and voted against the levy, it would have still passed by about 9,618 votes.
{¶ 23} R.C. 319.301(D) imposes a mandatory duty upon the tax commissioner to perform two ministerial operations. The statute states: “With respect to each tax authorized to be levied by each taxing district, the tax commissioner, annually, shall do both of the following * * *.” (Emphasis added.) The statute then requires the tax commissioner to calculate the tax-reduction percentages, R.C. 319.301(D)(1), and certify the percentages to the appropriate county auditors, R.C. 319.301(D)(2). Tax Commissioner Testa has refused to calculate the reductions because, in his judgment, the failure to place the measure on the relevant ballots in Franklin, Marion, Morrow, and Union Counties renders the levy invalid.
{¶ 24} According to the majority, the tax commissioner’s duty to apply the reduction factors and calculate the tax rates never arose “because no proper certification of the multicounty election has been presented to the tax commissioner demonstrating that the tax is ‘authorized to be levied’ ” under R.C. 319.301(D). Majority opinion at ¶ 1. This conclusion is based on the majority’s assumption that the only proper method for certifying the results of a multicounty election to the tax commissioner is on a Form 5-U. But the majority cites no legal authority for this assumption.
{¶ 25} The Ohio Ballot Questions and Issues Handbook issued by Ohio Secretary of State Jon Husted in 2013[1] makes clear that an election “certifica *641 tion” can take different forms, depending on the nature of the election and the recipient of the certification. The first “certification” occurs after a board of elections completes its official canvass of the vote, when it must declare the election results, in writing and signed by a majority of the board members. R.C. 3505.38.
{¶ 26} According to page 1-14 of the handbook, “After a board has conducted its official canvass process and certified the official results of the election, the board must certify the results to the Secretary of State’s office.” This certification to the secretary of state’s office can take one of two forms. “In most instances,” the county board of elections can- simply submit its official certification of results. Id. But when there is a multicounty issue, the board of elections of the most populous county must submit a Form 5-U “that clearly lists the final vote totals of each county in the district or jurisdiction, as well as the final, aggregated total of votes cast for and against the question or issue.” Id.[2] The form itself indicates that it is to be used for property-tax levies and elections on income or sales taxes.
{¶ 27} However, there is no indication, either in the handbook or on the form itself, that Form 5-U is the proper form to send to the tax commissioner. • The handbook states:
Depending on the type of question or issue, a board of elections must also send certification of results to other offices. For the boards’ convenience, the Secretary of State’s office has prescribed forms for certification of results for some types of questions and issues. The master list of forms and the prescribed forms are available to boards of elections on the Secretary of State’s website. Only the most populous county for a multi-county question or issue must provide certification to the other offices listed below.
1. The board of elections must certify the results of an election on tax levies and bond issues to the following offices and agencies:
a. The county auditor of each county in which the election was held.
b. The fiscal officer of the subdivision in which the election was held.
c. The Tax Commissioner of the State of Ohio * * *
d. The Secretary of State.
*642 (Boldface sic.) Id. at 1-14 and 1-15.
{¶ 28} The secretary of state has promulgated different forms for certifying election results to the tax commissioner. For most property-tax levies, the appropriate document for certifying results to the tax commissioner is Form 125, “Certificate of Result of Election On Tax Levy in Excess of the Ten Mill Limitation.”[3] The bottom of Form 125 clearly states (unlike the Form 5-U) that it is to be delivered to the “Ohio Dept, of Taxation, Tax Equalization Division,” among others. In this case, it appears that the board of elections did submit a Form 125 to the Ohio Department of Taxation certifying the results of the election. And the evidence definitively establishes that the Delaware County Auditor later provided a copy of that form to the tax commissioner.
{¶ 29} The majority’s primary theory of the case rests on the assumption that a Form 5-U was required to be submitted to the tax commissioner and because no Form 5-U was submitted, the tax commissioner’s duty to calculate the reductions was never triggered. But there is no such legal requirement. Form 125 is a legitimate form, if not the only legitimate form, to use to certify results to the tax commissioner.
{¶ 30} The majority opinion begs the question that lies at the heart of this case: having received a Form 125 certification, what gave the tax commissioner the authority to look beyond this certification and demand additional documentation? The majority implies that the tax commissioner was within his discretion to demand a copy of the Form 5-U, to ensure that the levy had been properly approved. But here again, it can identify no authority for this proposition.
{¶ 31} On October 12, 2016, the Department of Taxation instructed the county auditors that they must submit a Form 5-U in all instances involving a levy proposed to voters in more than one county. However, there is no evidence in the record to suggest that the department subjected this new requirement to the rulemaking process. “We have repeatedly held that when the tax commissioner seeks to exercise administrative authority in a systematic way over a broad range of taxpayer claims, he must promulgate his pronouncement as an administrative rule.” Renacci v. Testa, 148 Ohio St.3d 470, 2016-Ohio-3394, 71 N.E.3d 962, ¶ 37. Because the tax commissioner did not promulgate this requirement as a rule, it cannot have the force of law. Progressive Plastics, Inc. v. Testa, 133 Ohio St.3d 490, 2012-Ohio-4759, 979 N.E.2d 280, ¶ 31.
{¶ 32} Moreover, even if he had gone through the proper procedures, the requirement of a Form 5-U would be beyond the scope of the tax commissioner’s *643 authority. The majority cites R.C. 319.301(G) as authority for the tax commissioner, in the exercise of his discretion, to demand a copy of the Form 5-U. That statute provides that “[t]he commissioner may order a county auditor to furnish any information the commissioner needs to make the determinations required under division (D) or (E) of this section.” According to the majority, the tax commissioner required the Form 5-U in order to determine that the tax was in fact “authorized” to be levied.
{¶ 33} The purpose of R.C. 319.301(G) is to authorize the tax commissioner to request additional information, on a case-by-case basis, necessary to make the tax and reduction calculations. It is neither the duty nor the prerogative of the tax commissioner to investigate the conduct of elections, and as a result, he could not promulgate a binding rule based on a claim of statutory authority that he did not possess. See Nestle R & D Ctr., Inc. v. Levin, 122 Ohio St.3d 22, 2009-Ohio-1929, 907 N.E.2d 714, ¶ 40 (no deference owed to agency’s regulation when the legislature did not delegate administrative authority in that particular area). The only verification of the levy’s passage that the tax' commissioner required from the board of elections was the Form 125 certification, which is “ ‘conclusive as to the result of an election until set aside or vacated in some manner authorized by law.’ ” State ex rel. Byrd v. Summit Cty. Bd. of Elections, 65 Ohio St.2d 40, 42, 417 N.E.2d 1375 (1981), quoting State ex rel. Shriver v. Hayes, 148 Ohio St. 681, 76 N.E.2d 869 (1947), paragraph one of the syllabus.
{¶ 34} Contrary to the majority’s assertion, this court’s decision in State ex rel. Daoust v. Smith, 52 Ohio St.2d 199, 371 N.E.2d 536 (1977), is directly on point and supports issuing the writ. In that case, the Toledo Board of Education directed the board’s clerk-treasurer to sign tax-anticipation notes to fund the Toledo public schools, following the passage of a tax levy. The clerk-treasurer refused, citing “irregularities that deviate from statutory requirements' in both the notice of election and the form of the ballot.” Id. at 200. We granted a writ of mandamus, holding that an election contest under R.C. 3515.08 et seq. was the only method by which to challenge the election results and that in the absence of a challenge, the board’s certification of the election results was conclusive. Id. at 200-201. The majority’s effort to distinguish Daoust is unpersuasive because the certification of the election results in that case was no more or less legitimate than the certification in this case.
{¶ 35} Today’s decision will become a case study in the law of unintended consequences. It may seem uncontroversial to support the tax commissioner’s decision on these facts, when the parties agree that the board of elections made a mistake. But the next time the tax commissioner decides, in the exercise of his supposed discretion, that a tax levy is invalid, the facts may be disputed and the governing law uncertain. The result in that situation will be the resolution of an *644 election challenge in litigation between the tax commissioner and the local school district, a lawsuit from which the most essential parties—the secretary of state, the local board of elections, or even an affected elector—will be absent. This is not what the General Assembly envisioned when it enacted a comprehensive statutory scheme for election challenges in R.C. Chapter 3515.
Bricker & Eckler, L.L.P., Maria J. Armstrong, Anne Marie Sferra, and Nicole M. Donovsky, for relator.
Michael DeWine, Attorney General, and Christine Mesirow, Assistant Attorney General, for respondent.
Squire Patton Boggs, L.L.P., Steven A. Friedman, and Richard D. Manoloff, urging granting of the writ for amici curiae, Ohio School Boards Association, Buckeye Association of School Administrators, and Ohio Association of School Business Officials.
{¶ 36} I dissent.
French and Fischer, JJ., concur in the foregoing opinion.

. Updated in part in 2014 and 2015, available at https://www.sos.state.oh.us/SOS/Upload/elections/ EOresources/general/2013QandI-Updated2014-07.pdf (accessed Feb. 24, 2017).

. Interestingly, according to the more recent Election Official Manual issued by the secretary of state as of January 2017, so long as the most populous county in a multicounty jurisdiction provides the necessary information to the secretary of state, it can do so in any format; the use of Form 5-U is not required. See https://www.sos.state.oh.us/SOS/Upload/eleetions/directives/2017/Dir2017-02_ EOM.pdf, at 8-26 (accessed Feb. 24, 2017).

. For elections on school-district income taxes, the appropriate form for certifying results to the tax commissioner is Form 125-A.