[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *NWD 300 Spring, L.L.C. v. Franklin Cty. Bd. of Revision,* Slip Opinion No. 2017-Ohio-7579.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-7579

NWD 300 SPRING, L.L.C. *v.* FRANKLIN COUNTY BOARD OF REVISION ET AL., APPELLEES; REIDY ET AL., APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *NWD 300 Spring, L.L.C. v. Franklin Cty. Bd. of Revision,* Slip Opinion No. 2017-Ohio-7579.]**

*Taxation—Real-property valuation—Board of Tax Appeals' adoption of valuation found in board of education's appraisal was reasonable and lawful—Decision affirmed.*

(No. 2016-0102—Submitted May 16, 2017—Decided September 14, 2017.)

APPEAL from the Board of Tax Appeals, Nos. 2015-106, 2015-123, 2015-124, 2015-125, 2015-126, 2015-127, 2015-128, 2015-129, 2015-130, 2015-131, 2015-132, 2015-133, 2015-134, 2015-135, 2015-136, 2015-137, 2015-138, 2015-139, 2015-140, 2015-141, 2015-142, 2014-143, 2015-144, 2015-145, 2015-147, 2015-148, 2015-149, 2015-150, 2015-151, 2015-152, 2015-153, 2015-154, 2015-155, 2015-156, 2015-157, 2015-158, 2015-159, 2015-160, 2015-161, 2015-162, 2015-163, 2015-164, 2015-169, 2015-170, 2015-171, 2015-172, 2015-173, 2015-174,

2015-175, 2015-176, 2015-177, 2015-178, 2015-179, 2015-180, 2015-181, 2015-182, 2015-184, 2015-185, 2015-186, 2015-187, 2015-188, 2015-189, 2015-190, 2015-192, 2015-193, 2015-194.

_____

**O'CONNOR, C.J.**

{¶ 1} This appeal concerns the tax value of the land underlying the North Bank Park Condominiums ("North Bank") in Franklin County for tax year 2013. We conclude that the decision of the Board of Tax Appeals ("BTA"), which adopted the value found in an appraisal report submitted by the Columbus City Schools Board of Education ("BOE"), is reasonable and lawful. Therefore, we affirm.

## RELEVANT BACKGROUND

{¶ 2} North Bank is a 100-unit high-rise residential condominium building with an attached garage, constructed in Columbus in 2007. Franklin County carries each condominium unit in North Bank as a separate parcel on its tax list. And for tax purposes, each condominium is separately valued. *See* R.C. 5311.11 (each condominium unit plus "the undivided interest in the common elements appurtenant to it" is deemed to be a separate parcel for tax purposes).

{¶ 3} For the 2013 tax year, North Bank enjoyed a tax abatement applicable to improvements but not to the underlying land. As a result, appellants, who are owners of many of the individual condominium units (the "unit owners"), are liable for tax only with respect to the value of the underlying land. Each unit owner pays tax on a proportionate share of the value of the 1.01 acres on which the building is situated. The land value of the acre on which the building sits is proportionately divided among the condominium units. *See* R.C. 5311.01(F)(1) (including in the definition of "common elements" the "land described in the [condominium] declaration").

**The BOR Proceedings**

{¶ 4} In 2011, the Franklin County auditor increased North Bank's land value from $959,409 to $6,317,343. The unit owners and the developer (as owner of several unsold units) filed complaints challenging that increase for the 2013 tax year. The BOE filed countercomplaints in many of the cases, seeking to retain the auditor's value.

{¶ 5} In a consolidated hearing before the BOR, the unit owners presented documentation of the land shares of the individual owners, an appraisal with testimony by the appraiser, and a spreadsheet showing the appraisal valuation apportioned to the individual units. The unit owners' appraiser, Debi Wilcox, a member of the Appraisal Institute ("MAI"), opined a value of $1,200,000 based on a sales-comparison approach that used other land parcels sold for residential apartment development as comparables. Wilcox also testified regarding her understanding that the county valued the land by extracting a land value as a percentage of condo sale prices—the "allocation method" referred to by the unit owners. She opined that the approach was improper when comparables were available.

{¶ 6} The BOR rejected the unit owners' appraisal and adopted the auditor's higher valuation primarily because the unit owners' appraisal valued the property as if the property was unimproved land, whereas the auditor's delegate opined that the land valuation should have been predicated on the as-improved value of the property. The BOR decision letter, issued January 8, 2015, extended the higher valuation to 2014 as well.

**The BTA Proceedings**

{¶ 7} The unit owners appealed to the BTA. There, the BOE presented the appraisal report and testimony of Thomas Sprout, MAI, who opined a value of $3,300,000 for the 2013 tax year based on a sales-comparison approach that relied on sales of downtown land parcels intended for mixed-use development. The unit

owners again offered the report and testimony of their appraiser, Wilcox, who explained her selection of comparables and criticized Sprout's comparables because they were located in the "central business district." Sprout defended his choice of comparables by noting that in his view, walkability to athletic and other events made the property at issue even more desirable than the downtown properties that he had used as comparables.

{¶ 8} Both the unit owners' appraisal and the BOE's appraisal valued the land beneath the condominiums as if it were unimproved. In other words, both appraisers considered developers looking at vacant land in light of any potential commercial and residential uses. Neither appraiser considered the property's improvements—in stark contrast to the auditor's approach, which ascribed a portion of the retail price of the condominiums to the land beneath.

{¶ 9} The BTA adopted the land value in the BOE's appraisal. In its decision, the BTA noted five points of difference between the unit owner's appraisal and the BOE's appraisal that weighed in favor of adopting the BOE's appraisal. First, the BTA faulted the unit owners' appraisal for "utiliz[ing] only sales of properties ultimately developed into apartments, while Mr. Sprout [for the BOE] considered a wider variety of commercial development." BTA Nos. 2015-106 et al., 2015 WL 11018757, *4 (Dec. 23, 2015). Second, the unit owners' appraisal did not consider any sales after the lien date and even included one sale that occurred almost 40 months before the lien date, with no adjustment for time or market conditions. *Id*. Third, the BOE's appraisal included a variety of parcels by size, whereas the unit owners' appraisal used only large properties. *Id*. Fourth, the BOE's appraisal analyzed the comparables using a square-footage analysis as opposed to a per-unit or per-acre price, which the BTA found appropriate given the mere 1.01-acre size of the subject land. *Id*. Finally, the BTA found that the BOE's appraisal made appropriate adjustments to the comparables whereas the unit owners' appraisal did not. *Id*.

**{¶ 10}** In sum, the BTA concluded that the BOE's appraisal contained "a more thorough analysis and better reflect[ed] the true value of the subject property." *Id*. The BTA ordered that the properties be valued in accordance with their proportionate share of the total land value of $3,300,000 that was set forth in the BOE's appraisal.

**{¶ 11}** With respect to tax year 2014, the BTA faulted the BOR for extending its valuation to that year because the period for filing a complaint for 2014 was still open when the BOR issued its decision. Relying on earlier decisions, the BTA found that the BOR improperly exercised jurisdiction over 2014, and it remanded the matter of the tax-year-2014 value to the BOR. *Id*. at *2.

**{¶ 12}** The unit owners now appeal, reiterating their contentions that the BTA should have adopted the land value in their appraisal report rather than the higher value in the BOE's appraisal report.

## ANALYSIS

### Standard of Review

**{¶ 13}** When reviewing a BTA decision, we determine whether the decision is reasonable and lawful; if it is both, we must affirm. R.C. 5717.04. Our review is guided by the premise that " '[t]he fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities.' " *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, ¶ 17, quoting *Cuyahoga Cty. Bd. of Revision v. Fodor*, 15 Ohio St.2d 52, 239 N.E.2d 25, syllabus. Moreover, "[w]hen it reviews appraisals, the BTA is vested with wide discretion in determining the weight to be given to the evidence and the credibility of the witnesses that come before it." *Id*. at ¶ 9, citing *Cardinal Fed. S. & L. Assn. v. Cuyahoga Cty. Bd. of Revision*, 44 Ohio St.2d 13, 336 N.E.2d 433 (1975), paragraph three of the syllabus.

**{¶ 14}** The standard for reviewing the BTA's determination of the credibility of witnesses and the weight to be given their testimony is abuse of discretion. *Id*. at ¶ 14. To find an abuse of discretion would require us to find an arbitrary or unconscionable attitude below. *See Renacci v. Testa*, 148 Ohio St.3d 470, 2016-Ohio-3394, 71 N.E.3d 962, ¶ 32.

### The Auditor's Original Valuation Is Not at Issue in this Appeal

**{¶ 15}** The unit owners first challenge the "allocation method of appraisal, by which a fixed percentage of the retail price of a downtown high rise condominium is used as the tax valuation of the underlying land." The record indicates that the auditor's valuation probably embodied this "allocation method," but the appraisal value ultimately adopted by the BTA does not. Because the validity of the auditor's methodology has not been challenged nor been shown to be material to resolving the dispute, we decline to address it.

### The BTA Did Not Abuse Its Discretion By Finding the BOE's Appraisal To Be More Probative

**{¶ 16}** We find no indications that the BTA abused its discretion by adopting the land value found in the BOE's appraisal. The testimony and report by the BOE's appraiser presented no legal errors or obvious factual mistakes, and there is no indication of a failure to apply professional judgment. The BOE's appraiser simply opined that the subject land had a higher value than that found by the unit owners' appraiser. But there is nothing that indicates the difference to be the result of anything other than differing professional judgments. "We will not overrule BTA findings of fact that are based upon sufficient probative evidence." *R.R.Z. Assocs. v. Cuyahoga Cty. Bd. of Revision*, 38 Ohio St.3d 198, 201, 527 N.E.2d 874 (1988).

**{¶ 17}** The unit owners' specific objections do not amount to a claim of legal error, nor do they establish that the BTA employed an unreasonable or unconscionable attitude in relying on the BOE's appraisal. The unit owners first

point to the state of the "Pen West" area many years ago, but that has little relevance to valuing the property as of January 1, 2013. Next, the unit owners challenge two of the comparables used in the BOE's appraisal, because they are located along High Street in the central business district and have or are anticipated to have commercial tenants on the lower level, while the subject property is located adjacent to the Arena District—outside the central business district—and has no commercial tenants. But the BOE's appraiser's use of these comparables reflects his opinion that the subject property's location is actually better than the comparables' location; he noted that Arena District buildings commanded higher rents than did those along the High Street corridor downtown. Reference to the mixed-use comparables also comports with the highest-and-best-use determination in the BOE's appraisal, which considered "a mixed use development featuring all three uses [i.e., multi-family residential, retail, and office]" to be "the most financially feasible and provide the maximum profit to the land." And it comports with the statement in the unit owners' appraisal that "the most profitable use of the site would be commercial." We see no legal basis for second-guessing the BOE's appraiser's professional judgment, nor any reason why the BTA's reliance on it would be unreasonable.

{¶ 18} Because the BTA did not abuse its discretion by relying on the BOE's appraisal, we affirm.

### The Unit Owners Failed To Raise the Issue of Tax Year 2014 in Their Notice of Appeal

{¶ 19} The unit owners also contend that the BTA erred by remanding the matter of the tax-year-2014 value to the BOR as opposed to carrying forward the 2013 value. But this claim is barred because the unit owners' notice of appeal from the decision of the BTA does not raise the issue. *See Sears, Roebuck & Co. v. Franklin Cty. Bd. of Revision*, 144 Ohio St.3d 421, 2015-Ohio-4522, 44 N.E.3d 274, ¶ 12.

## CONCLUSION

{¶ 20} For the foregoing reasons, we affirm the BTA's decision.

Decision affirmed.

O'DONNELL, KENNEDY, FRENCH, O'NEILL, FISCHER, and DEWINE, JJ., concur.

_____

Law Offices of Russell A. Kelm, Russell A. Kelm, and Colleen M. Koehler, for appellants.

Rich & Gillis Law Group, L.L.C., Mark H. Gillis, and Kelley Gorry, for appellee Columbus City Schools Board of Education.

_____